JAMES R. KLAUSER, Chairman, State Elections Board
You have asked a number of questions related to the impact of the United States Supreme Court decision in the case of Buckleyv. *Page 146 Valeo (1976), 96 S.Ct. 612, on the state's campaign finance law as enforced by the State Elections Board. The Supreme Court in the Buckley case held that certain provisions of the Federal Election Campaign Act of 1971 (hereafter FECA), as amended in 1974, violated First Amendment guarantees of freedom of expression and association. It is apparent from the Buckley case and a comparison of the Federal Election Campaign Act with our state law that most of the provisions of ch. 11 are unaffected. For example, the court in Buckley generally approved the provisions in the FECA imposing contribution limitations and disclosure requirements. Since the provisions in the state law are very similar to those in the FECA,[1] you may presume their continued validity. However, several of the provisions of state law now appear to be unconstitutional and others require a narrow construction in order to avoid unconstitutionality. Your specific questions are related to those sections. Prior to answering your questions I wish to make several preliminary observations.
First, in agreeing to issue this opinion I have considered the alternatives available to the state as a means of obtaining a timely answer on the constitutionality of ch. 11, Stats., in light of the Buckley case. One option would have been to advise you to presume the constitutionality of ch. 11 and proceed to enforce it. This option would have required individual persons charged with violations of the act to challenge its provisions, a time-consuming and costly process. In addition, some individuals charged with violations under the act would have those charges used against them in the course of the campaign despite the fact that the law might later be declared unconstitutional. An unnecessary hardship would thus be imposed on candidates faced with the choice of complying with the law or violating the law as written in an effort to raise the constitutional questions.
We also considered and discarded the option of attempting to raise these questions through litigation. Some of the questions presented here are presently before the courts. These cases may not decide all of the issues raised or they may be decided on other grounds. *Page 147 
The enforcement of those portions of the election laws which appear to be obviously unconstitutional may subject board members to personal liability. In the recent case of Wood v. Strickland
(1975), 420 U.S. 308, reh. den. 421 U.S. 921, the Court held that members of a local school board who violated the due process rights of individual students could be held personally liable where they knew or should have known that their actions would violate the student's rights. Members of the Board are likely subject to the same rules of qualified immunity. Consequently I am departing from the long established practice of not issuing an opinion where the question involved is in litigation. Under the circumstances, I feel it is my duty to advise you as to those provisions in state law which appear to be clearly unconstitutional.
Second, you also need to recognize that answering your questions has required certain assumptions as to the severability of our campaign finance law. I conclude below that portions of ch. 11 are unconstitutional. The question then arises whether the remaining portions of the statutes can be saved. In circumstances where it appears that portions of a statute are not severable, a declaration that portions of an act are unconstitutional may result in the entire act being voided. I have concluded for the reasons set forth below that ch. 11 of the Wisconsin Statutes can be interpreted in a narrow manner consistent with the United States Supreme Court decision in the Buckley case. However, ch. 11 should be amended at the earliest possible date by legislation which reflects the discussion below.
CAMPAIGN EXPENDITURES
You first ask whether the statutory limitations on campaign expenditures contained in sec. 11.31, Stats., are constitutional.
Section 11.31, Stats., prohibits any candidate for state or local office from making or authorizing disbursements from the campaign treasury which exceed stated limits. For example, candidates for governor are limited to expending $150,000 in the primary and $350,000 in the general election. Sec. 11.31 (1) (a), Stats. Candidates for alderman in cities of the first class may not make or authorize expenditures in excess of $8,000 for both the primary and general elections. Sec. 11.31 (1) (g) 3. d., Stats. *Page 148 
Section 11.31 (3), Stats., limits expenditures by imposing limitations on voluntary committees and individuals. This subsection provides:
 "(3) In addition to the amounts authorized under s. 11.05 (1) and (2), a voluntary committee or individual registered under s. 11.05 and filing an oath under s. 11.06
(7) may receive contributions and make disbursements from the funds or property received under s. 11.12 (1) not exceeding an aggregate total of $50 during any calendar year."
Expenditure limitations of this type were expressly invalidated by the Court in Buckley. In fact, the Court struck down all
expenditure limitations imposed by the FECA on individuals, groups, and candidates. In so doing, the court distinguished expenditure limitations from limitations on contributions and disclosure provisions. The Court stated that ". . . although the Act's contribution and expenditure limitations both implicate fundamental First Amendment interests, its expenditure ceilings impose significantly more severe restrictions on protected freedoms of political expression and association . . ." Buckley
at 636. Moreover, ceilings on expenditures interfere with associational activity by "preclud[ing] most associations from effectively amplifying the voice of their adherents, the original basis for the recognition of First Amendment protection of the freedom of association." Buckley at 636.
Second, the Court felt that the valid governmental interest in alleviating the corrupting influence of large contributions was adequately served by the Federal Act's contribution limits and disclosure provisions and that the expenditure ceilings were relatively less important. Buckley at 647-8. Chapter 11, Stats., imposes contribution limits and disclosure provisions similar (although not identical) to the federal act.
Based on Buckley it is my opinion that the direct expenditure limitations of sec. 11.31 (1), (3). and (4) are clearly invalid. Additionally, it is my opinion that secs. 11.31 (2), (5), (6), (7) and 11.26 (9), Stats., although they do not impose direct limitations and are therefore not themselves substantively invalid, have no separate function to perform independent of the invalid portions of the statute and should be considered a nullity. 2 Sutherland Statutes and Statutory Construction, sec.44.04 (4th ed. C. Sands, Supp. 1976). *Page 149 
I am also of the opinion that the limit on the size of a candidate's post election advertisement thanking his supporters contained in sec. 11.315, Stats., is invalid since it indirectly imposes an expenditure limitation on the candidate and does not have a direct relation to the election process itself.
PERSONAL CAMPAIGN CONTRIBUTIONS
Second, you ask whether the limitations contained in sec.11.26, Stats., on contributions of a candidate to his own campaign are constitutional.
Section 11.26 (10) provides:
 "(10) Notwithstanding sub. (1), a candidate may make contributions of not more than 150% of the amounts specified to his own campaign, except that any candidate who is covered under s. 11.31 (1) (g) and (h) may make contributions of not more than $500, or 300% of the amounts specified to his own campaign, whichever is greater. The contribution limit of sub. (4) applies to amounts contributed by a candidate personally to his own campaign and to other campaigns, except that a candidate may exceed the limitation if he is authorized under this section to contribute more than the amount specified to his own campaign, up to the amount of that limitation. A candidate's personal contributions must be deposited in his campaign depository account and reported in the normal manner."
In Buckley, supra, sec. 608 (a) (1) of the FECA was considered by the court. That section imposed a maximum dollar limit on a candidate's use of personal funds, which varied depending on the office sought. The only difference between that section and sec.11.26 (10) is in the method of calculating the dollar limitation.
In Buckley, the Court discussed limitations on a candidate's personal expenditures as follows:
 "The ceiling on personal expenditures by candidates on their own behalf, like the limitations on independent expenditures contained in sec. 608 (e) (1), imposes a substantial restraint on the ability of persons to engage in protected First Amendment expression. The candidate, no less than any other person, has a First Amendment right to *Page 150 
engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates. Indeed, it is of particular importance that candidates have the unfettered opportunity to make their views known so that the electorate may intelligently evaluate the candidates' personal qualities and their positions on vital public issues before choosing among them on election day. Mr. Justice Brandeis' observation that in our country `public discussion is a political duty,' Whitney v. California 274 U.S. 357, 375, 47 S.Ct. 641, 648, 71 L.Ed. 1095 (1927) (concurring opinion), applies with special force to candidates for public office. Section 608 (a)'s ceiling on personal expenditures by a candidate in furtherance of his own candidacy thus clearly and directly interferes with constitutionally protected freedoms." Buckley
at 651.
The Court discussed the several justifications advanced for sustaining such limitations and specifically rejected the notion that the government's interest in preventing actual and apparent corruption of the political process was a justification for the limitation. Indeed, the Court pointed out that this interest was adequately served by the contribution limits, and that a candidate's use of his own funds reduces a need for outside contributions, thus reducing any actual or apparent corruption of the political process. Buckley at 651. The Court also rejected the second governmental interest advanced: to equalize resources among candidates. That interest was found insufficient to overcome the First Amendment's protection of the ". . . freedom of a candidate to speak without legislative limit on behalf of his own candidacy." Buckley at 651.
Since there are no special or additional justifications which could be advanced to sustain the validity of sec. 11.26 (10), it is my opinion that all of this section except the last sentence relating to deposit and reporting of funds is unconstitutional.
SCOPE OF REGULATED ACTIVITY
Third, you have asked a general question concerning the scope of regulated activity and expression in light of the definitions of political activity and related terms contained in secs. 11.01
(16), 11.01 (10), 11.01 (9) and 11.23, Stats. This poses the most difficult set of questions raised in your request.
Section 11.01 (16) states that: *Page 151 
 "(16) An act is for `political purposes' when by its nature, intent or manner it directly or indirectly influences or tends to influence voting at any election. Such an act includes support or opposition to a person's present or future candidacy or to a present or future referendum. A `political purpose' does not include expenditures for defense attorney's fees and other legal fees, costs and expenses, or payments supporting any person subject to criminal prosecution for violation of state or federal law, or for any agent or dependent of such a person."
This section, along with the others cited above, evidences a legislative intent to restrict and regulate a broad scope of political activity, including that which may not be directly related to the electoral process. This sweeping effort to regulate protected First Amendment activity, in light of Buckley, may be constitutionally overbroad unless subject to narrow interpretation and application.
It is a cardinal rule of statutory construction that where possible statutes are to be construed to preserve their constitutionality. Town of Madison v. City of Madison (1955),269 Wis. 609, 70 N.W.2d 249. Here, such a construction is not suggested from the face of these sections of the statutes. While the Buckley case itself does not directly answer the question since the regulations involved in Buckley were more narrowly drawn than those presented here it may help the Board in interpreting and applying ch. 11.
The Court in Buckley directly decided that regulation of political activity by imposing expenditure limitations is impermissible and that regulation by requiring public disclosure of expenditures is permissible. In these two areas of regulation, a narrow definition of the political activity subject to regulation is constitutionally mandated to protect freedoms of speech and association. The Court adopted the standard of "express advocacy" of the election or defeat of a particular candidate as an acceptably narrow definition of activity subject to regulation. The Court did not explicitly set forth a single definition of "political activity" which might be applied in other situations.
Despite the focus on these two areas in Buckley, it is my opinion that the conclusions drawn there about the permissible scope of regulated activity must be given a broad application to similar provisions, including those in ch. 11, Stats. First, the Court's focus in Buckley was at least partly dictated by the scheme of the *Page 152 
FECA, wherein the scope of permissible regulation is indirectly defined through the definitions of "contribution" and "expenditure." Second, in both instances where the Court considered the question it narrowed the scope to encompass only "express advocacy" regarding candidates. Third, this general standard is easily inferrable from the Court's reliance on the distinction between issue discussion and advocacy of a political result. Buckley at 663. The Court approved regulation of activities directly affecting elections; general issue discussion must remain unhampered by regulation.
The implications of this standard are clear: sec. 11.01 (16) of the Statutes, if extended to its arguable limit, would impose unconstitutional restrictions upon protected free speech and associational activity. Either the sweep of this section must be narrowed by construction or it must fall as unconstitutional. Such a construction is suggested by the Court in Buckley. I am of the opinion that the "express advocacy" standard should be applied by the Board to all phases of political activity regulated under ch. 11. The application of this standard is a perogative of the Board and will have to be accomplished on a case-by-case basis.
For similar reasons, sec. 11.01 (10) should be narrowly construed. That section provides:
 "(10) An act is `in support of' or `in opposition to' a candidate when it is done with the primary purpose, or when it carries the substantial consequence, of influencing voting at an election for public office. Such an act does not include the making of a contribution or disbursement for the maintenance of permanent offices or the employment of continuing staff for a continuing political party or permanent committee."
The language "when it carries a substantial consequence" may be subject to an overbroad interpretation. Thus, for example, it is not clear which acts may have such "substantial" consequences. Protected First Amendment activity undertaken for purposes unrelated to an election may have a substantial influence on the outcome of that election. Consequently, it is my opinion that the language "when it carries the substantial consequence" should be interpreted to apply only to acts which are undertaken with the purpose of expressly advocating the election or defeat of an identified candidate. *Page 153 
Sections 11.01 (9) and sec. 11.23 pose somewhat different questions. Section 11.01 (9) provides:
 "`Group' or `political group' means any person other than an individual and any combination of 2 or more persons, permanent or temporary, which makes or accepts contributions or makes disbursements for the purpose of influencing the outcome of any referendum
whether or not engaged in activities which are exclusively political." (Emphasis supplied.)
Section 11.23 provides in pertinent part:
 "(1) Any group or individual may promote or oppose any referendum in this state. Before making disbursements, receiving contributions or incurring obligations in excess of $25 in the aggregate in a calendar year for such purposes, the group or individual shall file a verified registration statement under s. 11.05 (1), (2) or (2r). In the case of a group the name and mailing address of each of its officers shall be given in the statement. Every group and every individual under this section shall designate a campaign depository under s. 11.14. Every group shall appoint a treasurer, who may delegate his authority but is jointly responsible for the actions of his authorized designee for purposes of civil liability under this chapter. The appropriate filing officer shall be notified by a group of any change in its treasurer within 10 days of the change under s. 11.05 (5). The treasurer of a group shall certify the correctness of each statement or report submitted by it under this chapter. (Emphasis supplied.)
"***
 "(4) Each group or individual shall file periodic reports as provided in ss. 11.06, 11.19 and 11.20.
"***"
These two sections do not appear to require reporting of all expenditures and disbursements for groups which engage only in part in attempts to influence elections or referenda. The requirement of sec. 11.23 that expenditures be "for such purposes" restricts its application to receiving contributions or making disbursements for the purpose of promoting or opposing any referendum. *Page 154 
The Buckley case itself differentiates between advocacy of ideas and advocacy linked to the election of particular candidates. Section 434 (e) of the FECA was construed narrowly to impose independent reporting requirements on groups and individuals that are not candidates or political committees only:
 ". . . (1) when they make contributions earmarked for political purposes or authorized or requested by a candidate or his agent, to some person other than a candidate or political committee, and (2) when they make an expenditure for a communication that expressly advocates the election or defeat of a clearly identified candidate." Buckley at 664.
The Buckley Court discussed two possible justifications for these requirements. One justification was ". . . to stem corruption or its appearance . . ."; the other was to ". . . shed the light of publicity on spending that is unambiguously campaign-related but would not otherwise be reported . . . ."Buckley at 664. The "anti-corruption" justification may be less compelling in the referendum case where there is no candidate to corrupt. The public information rationale, however, appears to be equally valid in the referendum situation.
I am of the opinion that the restrictions in these sections are constitutional when narrowly construed. It is my advice that the Board adopt a construction of sec. 11.23 which states that it will be applied only to disbursements or receipt of contributions or incurring of obligations directly related to express advocacy of a particular result in a referendum.
The Board should announce their interpretations of these sections through emergency rules.
EXEMPTION OF MINOR PARTIES
Fourth, you have asked the extent of the Board's authority to exempt minor parties, whose contributors would be subject to threats, harassment, or reprisals if their identities were disclosed, from the reporting requirements contained in ch. 11.
The Court in Buckley upheld disclosure requirements, finding that they serve the substantial governmental interests of information, deterrence of corruption, and detection of violations of the contribution limitations. Buckley at 657-8. However, the Court, relying on NAACP v. Alabama (1958), 357 U.S. 449, and other cases, noted that the delicate constitutional balance might tip *Page 155 
and prevent application of the disclosure provisions where a minor party could demonstrate that disclosure would subject contributors to threats, harassment, or reprisals. The Court clearly suggests that disclosure requirements of the type found in sec. 11.06, Stats. could be unconstitutionally applied and that relief would be appropriate where a proper evidentiary showing is made. Buckley at 659. Your basic question is whether and how the Board could handle such claims.
Section 5.05, Stats., which sets forth the powers and duties of the Board, is silent on the Board's power to act where allegations of unconstitutional application of sec. 11.06, Stats., are made. Chapter 11 provides no direct guidance.
The general rule is that administrative agencies have only those powers which are expressly granted to them or which are necessarily or fairly implied from the statutes governing their responsibilities. State ex rel. Farrell v. Schubert (1971),52 Wis.2d 351, 190 N.W.2d 529.
State agencies are granted certain general powers to interpret and apply the statutes which they administer. Sec. 227.06, Stats. Chapter 11 not only fails to address the question of who may grant exemptions, but is devoid of any recognition of a potential need for exemptions. I have considered the question of whether, standing alone, sec. 227.06 provides authority for the Board to decide applications for exemptions. Such a power, even in the absence of express statutory authority, was found by the court inDoe v. Martin (D.C. Cir. 1975), 404 F. Supp. 753, under the District of Columbia Campaign Finance Act. An administrative agency's power to pass on the constitutional applicability of statutes has been recognized to a limited extent even though administrative agencies have no power to pass on the constitutionality of the legislation itself. See 3 K. Davis,Administrative Law Treatise, sec. 20.04 (1958). Wisconsin courts have not considered these questions and I must therefore conclude that the Board's power to make determinations of exemptions for minor parties under sec. 227.06 is doubtful.
A court in examining this question would undoubtedly be influenced by sec. 5.05 which contemplates enforcement by the Board of "laws relating to elections and election campaigns," including violations of ch. 11. *Page 156 
Finally, the wisdom of the Board exercising such power, even if it were to be available, is questionable. The Court in Buckley
discussed the issue of exemptions with great specificity. While recognizing the inherent difficulties in establishing criteria to carve out a blanket exemption for minor parties, the Court nevertheless provided guidelines as to what kind of evidence would be sufficient to establish a party's entitlement to an exemption.[2] Although they are dicta, these guidelines will be used by any court or agency called on to decide individual applications for exemption from the disclosure requirements of sec. 11.06, Stats. There is an inherent difficulty in the 227.06 declaratory ruling procedure as applied to the types of factual questions which are suggested by Buckley. A ch. 227 administrative proceeding may not be an adequate adversary proceeding in that there may be no effective response to the allegations of the minor party seeking exemption. In the usual case there will likely be no organized or effective response to the request for exemption. The Board as the trier of law cannot, at the same time, be an adversary. The result can be expected to be an inadequate record for administrative review. A better procedure would be to have the Board oppose the exemption subjecting the claim to an adversary process in another forum.
For all these reasons I am of the opinion that the Board probably does not have and should not exercise the power of administrative review of minor party exemptions. Rather, I would counsel the Board to take an adversary position seeking to enforce the law as to all such groups, using declaratory judgment actions or enforcement proceedings to obtain judicial rulings on the question of exemptions.
AUTHORITY OF THE BOARD TO CONSTRUE STATUTES
Fifth, you ask the extent of the Board's authority to construe the provisions of ch. 11, Stats., so as to avoid unconstitutional overbreadth in secs. 11.01 (16), 11.01 (9), and 11.23, Stats. *Page 157 
For the reasons suggested above, the provisions of secs. 11.01
(9) and 11.23 are probably not constitutionally overbroad. Those sections for which a narrow construction has been suggested should be interpreted and applied by the Board in the manner suggested.
PROHIBITION OF CORPORATE CONTRIBUTIONS
Although you did not originally ask whether Wisconsin's ban on corporate contributions is constitutional in light of Buckley, I feel constrained to comment briefly in light of public concern. You have agreed that such comment would be appropriate. Sections11.38 (1) (a) and (b), and (2) (a), provide:
 "(1) (a) 1. No foreign or domestic corporation, or association organized under ch. 185, may make any contribution or disbursement, directly or indirectly, to any political party, committee, group, candidate or individual for any political purpose or to promote or defeat the candidacy of any person for nomination or election to any public office or any referendum to be submitted to the voters.
 "2. Notwithstanding subd. 1, any such corporation or association may establish and administer a separate segregated fund and solicit contributions from individuals to such fund to be utilized for political purposes by such corporation or association, but the corporation or association may not make any contribution to such fund. Such fund shall appoint a single treasurer and shall register as a political committee or group under s. 11.05. The corporation or association may not expend more than $500 annually for solicitation of contributions to such fund. (Emphasis supplied.)
 "(b) No political party, individual, committee, group or candidate may accept any contribution prohibited by this section.
 "(2) (a) This section does not affect the right of any individual to support candidates and purposes of his own choosing or his right to subscribe to a regularly published organization newspaper. (Emphasis supplied.)
"***" *Page 158 
Section 610 of the FECA imposes a total ban on corporate contributions at the federal level, similar to that imposed by sec. 11.38, Stats., in state and local elections. The Court inBuckley did not directly address the question of corporate contributions. Thus the validity of the similar ban under sec.11.38, Stats., appears to be unimpaired by the case.
The ban on political contributions by corporations in this state is of long standing and of broad application. See OAG 5-76 (65 OAG 10 (1976)), issued February 17, 1976. It is my opinion that a strong case can be made for the constitutionality of sec.11.38, Stats., and its total ban on corporate contributions. The long history of the operation of this ban has not inhibited robust political debate in this state. Moreover, individuals and groups have First Amendment rights under the Constitution; corporations do not. Other means of organization are readily available to groups wishing to engage in political activity.
ADMINISTRATION AND ENFORCEMENT
Sixth, you ask that in the event I find any of the Statutes in question to be unconstitutional or capable of unconstitutional application, I advise you as to the posture the Board should assume in the administration and enforcement of those sections.
Those portions of ch. 11 which I find unconstitutional should not be enforced and should be treated as if they did not exist. Those sections of ch. 11 which are susceptible of constitutional applications should be narrowly construed along the lines suggested herein. Those sections of ch. 11 which are not considered in this opinion should be enforced.
In addition, I believe that you should seriously consider the immediate adoption of a series of emergency administrative rules pursuant to sec. 227.027, Stats. Such rules, as you are no doubt aware, may remain in effect for a period of 120 days. If adopted soon, they will provide guidance during the period between now and the fall elections. This set of emergency administrative rules would be a better vehicle for announcing the intentions of the Board than requiring each and every local election official and candidate to carefully compare the provisions of ch. 11 with the rulings contained in this opinion. Moreover, the adoption of such emergency rules has the added advantage of a public announcement of Board policy in a manner which is likely to *Page 159 
provide publicity and actual notice to affected officials and other persons.
BCL:DJH
[1] Differences in the Wisconsin law on disclosure are noted and discussed by Eric Anderson in a forthcoming student note entitled "Campaign Finance After Buckley," to be published at 1976 Wis. L Rev. 3. Anderson concludes that none of the differences, including variations in the threshold for determining which committees and individuals must register and report, would render the Wisconsin requirements invalid underBuckley.
[2] "Minor parties must be allowed sufficient flexibility in the proof of injury to assure a fair consideration of their claim. The evidence offered need show only a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment or reprisals from either government officials or private parties. The proof may include, for example, specific evidence of past or present harassment of members due to their associational ties, or of harassment directed against the organization itself. A pattern of threats or specific manifestations of public hostility may be sufficient. New parties that have no history upon which to draw may be able to offer evidence of reprisals and threats directed against individuals or organizations holding similar views."Buckley at 661.