EDWIN FISHER, District Attorney Washburn County
Your predecessor advised that prior to a recent school district referendum election within your county, the local school board involved mailed a "fact sheet" to the resident electors of the school district concerning the issue which was the subject of the referendum vote. The fact sheet "purported to merely state the facts pertinent to the construction of a new elementary school building within the District." He inquired whether the school board of such a school district, which informs the electorate of facts pertinent to such a public issue, *Page 168 
must register or file campaign financing reports under ch. 11, Stats. He specifically directed my attention to sec. 11.23, Stats., which provides in pertinent part:
 POLITICAL GROUPS AND INDIVIDUALS; REFERENDUM QUESTIONS. (1) Any group or individual may promote or oppose any referendum in this state. Before making disbursements, receiving contributions or incurring obligations in excess of $25 in the aggregate in a calendar year for such purposes, the group or individual shall file a verified registration statement under s. 11.05 (1), (2) or (2r) . . . . The treasurer of a group shall certify the correctness of each statement or report submitted by it under this chapter.
. . . .
 (4) Each group or individual shall file periodic reports as provided in ss. 11.06, 11.19 and 11.20.
Section 11.01 (9), Stats., defines "group":
 "Group" or "political group" means any person other than an individual and any combination of 2 or more persons, permanent or temporary, which makes or accepts contributions or makes disbursements for the purpose of influencing the outcome of any referendum whether or not engaged in activities which are exclusively political.
In 65 Op. Att'y Gen. 145 (1976), which discusses the effect ofBuckley v. Valeo, 424 U.S. 1 (1976), on ch. 11, Stats., these statutory provisions were specifically discussed at pages 153-154, as follows:
 These two sections do not appear to require reporting of all expenditures and disbursements for groups which engage only in part in attempts to influence elections or referenda. The requirement of sec. 11.23 that expenditures be "for such purposes" restricts its application to receiving contributions or making disbursements for the purpose of promoting or opposing any referendum.
. . . .
 I am of the opinion that the restrictions in these sections are constitutional when narrowly construed. It is my advice that the *Page 169 
Board adopt a construction of sec. 11.23 which states that it will be applied only to disbursements or receipt of contributions or incurring of obligations directly
related to express advocacy of a particular result in a referendum.
Upon the issuance of that opinion, the Elections Board promulgated Wis. Adm. Code section ElBd 1.29, which provides, in part:
 SCOPE OF REGULATED ACTIVITY; REFERENDA. The requirements of disclosure and recordkeeping of s. 11.23, Stats., are applicable to individuals and groups other than groups formed primarily to influence the outcome of a referendum as to contributions, disbursements and obligations which are directly related to express advocacy of a particular result in a referendum.
Examples of express words of advocacy are: "vote for," "elect," "support," "cast your ballot for," "vote against," "defeat" and "reject." Buckley, supra at 44, fn. 52.
Based on the foregoing, it is evident that if, as the inquiry suggests, the distribution of information by the school board merely served to inform the electorate of the facts pertinent to the referendum election question and was not directly related to express advocacy of a particular result in the election, sec.11.23, Stats., would not apply to the actions of the school board.
BCL:JCM