WISCONSIN RIGHT TO LIFE, INC., Plaintiff–Appellant,

v.

Gregory J. PARADISE, Chairman of the Wisconsin State Election Board, et al., Defendants–Appellees.

No. 97–3668.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1998.

Decided March 13, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied April 16, 1998.*

* Judge Ripple took no part in the consideration or decision of this matter.

James Bopp, Jr. (argued), Glenn Willard, Bopp, Coleson & Bostrom, Terre Haute, IN, for Plaintiff–Appellant.

Alan Lee (argued), Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, for Defendants–Appellees.

Before FLAUM, EASTERBROOK, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

Wisconsin Right to Life, Inc., is a nonprofit anti-abortion organization that enjoys tax-exempt status under 26 U.S.C. § 501(c)(4). Tax exemption (and the associated deductibility of contributions) is incompatible with partisan political activity; to conduct express advocacy in elections WRTL has formed a political action committee that does not enjoy tax benefits. But almost everything related to abortion has political implications, and it is a challenge for any organization on any side of the abortion debate to carry out its principal activities without saying things about candidates for public office. WRTL publishes voter guides and flyers identifying candidates' positions on questions related to abortion and implicitly soliciting votes for the candidates whose positions are closest to WRTL's. (The affiliated PAC has published more explicit advertisements.) WRTL believes that its issue guides, flyers, and advertisements are political speech protected by the first amendment, and that it need not register as a political committee on their account—not only because the speech is independent of anyone's campaign and not "express" advocacy of candidates' elections but also because WRTL's "major purpose" is unrelated to the election of particular candidates. See FEC v. Massachusetts Citizens for Life, Inc., 479 U.S. 238, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986); Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). No one has threatened WRTL with sanctions or ordered it to register as a political committee, under either the Federal Election Campaign Act or its state counterpart, Wis. Stat. §§ 11.001-11.66. No one has sued WRTL under the citizen-suit provisions of the state law, § 11.60 and § 11.66. Nonetheless, claiming to fear the consequences of registration should it continue its former ways, WRTL curtailed its program of voter education and filed this suit against the Attorney General of Wisconsin and all members of the Wisconsin State Election Board, seeking declaratory and injunctive relief that would compel these state officials to administer the state election laws in accord with Buckley and Massachusetts Citizens for Life. The district court concluded that WRTL has standing to sue but abstained under Texas Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), holding that the state law is subject to a narrowing construction that would eliminate the constitutional claim WRTL advances.

Wisconsin's statute is much like the Federal Election Campaign Act. To a lay reader, both statutes require almost any group that wants to say almost anything about a candidate or election to register as a political committee. But in Buckley the Supreme Court construed (some would say rewrote) the federal statute to avoid some of the many constitutional problems that arise when regulating political speech, the core of the first amendment's domain. In Massachusetts Citizens for Life the Court held that many elements of the Buckley approach are required by the first amendment, which means that they apply to the states. See Austin v. Michigan Chamber of Commerce, 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990). The Supreme Court of Wisconsin has yet to decide a case under the parts of the state law that potentially affect WRTL, although the statute was enacted in 1973.

WRTL wants us to instruct the defendants that the state court will (à la *Buckley*) or must (à la *Massachusetts Citizens for Life*) treat the state's law as inapplicable to candidate comparisons and other forms of implicit advocacy, indeed as inapplicable even to express electioneering by a group whose major purpose concerns issues rather than candidates. Put this way, however, WRTL's suit seeks an advisory opinion. For unlike the plaintiff in *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503 (7th Cir.1998), an otherwise-similar case in Indiana, WRTL is not now threatened by any application of Wisconsin's law. It dreads such a possibility, and "actual and well-founded fear that the law will be enforced against" a group can make a claim justifiable even if enforcement lies in the future. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988); see also *American Booksellers Ass'n v. Hudnut*, 771 F.2d 323 (7th Cir.1985), aff'd mem., 475 U.S. 1001, 106 S.Ct. 1172, 89 L.Ed.2d 291 (1986). We may assume that WRTL has genuine apprehension about what lies ahead. But is its concern objectively "well-founded"? If not, Article III of the Constitution precludes a federal court from ruling. Moreover, WRTL has standing only if the harm in prospect can be redressed by the relief it seeks. *See Steel Co. v. Citizens for a Better Environment*, —— U.S. ——, ——, 118 S.Ct. 1003, 1016–17, —— L.Ed.2d —— (1998); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992); *Allen v. Wright*, 468 U.S. 737, 752, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 42–43, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). "Redressability" is an insurmountable hurdle for WRTL, as we shall see.

Although Wisconsin's law has been on the books for almost 25 years, the Election Board has not prosecuted any issue-advocacy group such as WRTL for failing to register as a political committee. This is not an accident. Shortly after the Supreme Court decided *Buckley*, the Attorney General of Wisconsin issued an opinion, 65 Op. Att'y Gen. 145 (1976), informing the Board that the approach articulated in *Buckley* should be applied to the state law as well. Every Attorney General of Wisconsin to hold office since 1976 has adhered to this view. This opinion is not binding on the Board, but in his role as the Board's lawyer the Attorney General can make his view felt. Although the Board is entitled to control litigation in the court of first instance, Wis. Stat. § 11.60(4), it generally requests the Attorney General to represent it under Wis. Stat. § 165.25(6), and the Attorney General always assumes control in the appellate courts. Wis. Stat. § 166.25(1). What is more, the Board appears to agree with the Attorney General. In August 1976 it promulgated a rule stating that groups are subject to registration and disclosure requirements only if they make political contributions to candidates (which WRTL does not) or "[m]ake expenditures for the purpose of expressly advocating the election or defeat of an identified candidate." Wis. Admin. Code § ElBd 1.28(2)(c). The Board does not have a regulation on the "major purpose" question, but § 1.28(2)(c), coupled with the Attorney General's opinion, appears to provide WRTL with the benefits it seeks from this lawsuit. Both sides to this litigation agree that guides and flyers, issued by groups such as WRTL, showing candidates' positions on issues the group deems significant, do not require the group to register as a political committee. How can a suit present a "case or controversy" when all litigants are on the same side?

WRTL's answer is that the parties disagree about the implementation of the principles articulated in *Buckley* and *Massachusetts Citizens for Life*. To acknowledge that these decisions govern the administration of Wisconsin's law is not necessarily to know how any particular facts should be handled. Recent events before the Board demonstrate this vividly. Several organizations similar to WRTL in their dedication to support of particular issues (such as term limits or environmental protection) ran advertisements during the 1996 election season. Many of these advertisements identified candidates' positions on the issues of concern to the organization and called on the voters to support candidates whose views the organizations approved. The advertisements did not say "vote for X", but members of the target audience were likely to conclude that voting

was one form of support the organizations had in mind. Several candidates on the wrong side of these ads complained to the Board (and also to the state courts, on which more below). A careful opinion by the Board's legal counsel outlined the current state of federal law, informing the Board that, although one court of appeals has concluded that advertisements similar to those placed in Wisconsin require a group to register as a political committee, see *FEC v. Furgatch*, 807 F.2d 857 (9th Cir.1987), others have concluded that such advertisements are outside the federal statute under *Buckley*, protected by the first amendment under *Massachusetts Citizens for Life*, or both. E.g., *FEC v. Christian Action Network, Inc.*, 110 F.3d 1049 (4th Cir.1997); *Maine Right to Life Committee, Inc. v. FEC*, 98 F.3d 1 (1st Cir.1996). The legal counsel also could have informed the Board that the application of the "major purpose" standard to issue advocacy groups has given rise to disagreements, see *Akins v. FEC*, 101 F.3d 731 (D.C.Cir. 1996) (en banc), cert. granted, —— U.S. ——, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997) (argued Jan. 14, 1998), but the parties to the administrative proceeding apparently did not lock horns on that subject. The Board's legal counsel concluded that the Supreme Court is more likely to follow the approach of *Christian Action Network* and *Maine Right to Life Committee* than the approach of *Furgatch*. In the event, however, the Board seems to have been persuaded by *Furgatch*, for it issued an order requiring the advertisers to register as political committees under Wisconsin law. We say "seems" because the Board's order does not give any reasons, and this is not the only weasel word in the preceding sentence. The Board lacks the authority to "require" registration; the statute rather than the Board does the requiring. Its decision tells the advertisers that if they do not register and provide the information required of political committees then "their records will be subpoenaed." *Travis v. Americans for Limited Terms, Inc.*, Elections Board Opinion & Order 96–38 (Mar. 17, 1997), at 1. They would be free to oppose the subpoenas and any penalties the Board proposes, which would propel the dispute toward state court—where the Attorney General's views would take center stage. But these details need not detain us. WRTL offers the

Board's decision as proof that it faces a genuine risk that speech on political subjects will lead to registration as a political committee. We think that this shows why the relief WRTL seeks is unrelated to the real problems it confronts.

■ Recall that WRTL has not engaged in any speech that the Board has found to be inappropriate for a group unregistered as a political committee. WRTL's argument accordingly must be that the Wisconsin campaign laws are unconstitutional as written rather than as applied—in legal jargon, that the statute is unconstitutional "on its face" unless understood to mean what *Buckley* says the Federal Election Campaign Act means. WRTL makes this explicit by arguing that the state law cannot be construed in a constitutional way and therefore must be invalidated *en toto*. Stated this way the argument is hopeless; the Supreme Court of Wisconsin has no less ability to construe the state law in a constitutional fashion than the Supreme Court of the United States displayed in *Buckley*. A litigant cannot create a case or controversy just by making an untenable "facial" attack on a statute; actual injury and redressability are essential no matter how the challenge is cast.

■ Suppose we were to agree with WRTL to the extent of saying that the Board must proceed as if *Buckley* and *Massachusetts Citizens for Life* were written directly into the Wisconsin statute. How could this eliminate the risk WRTL faces? The question seemingly before the Board in *Travis* was not whether to apply *Buckley*—for *every* responsible official in Wisconsin believes that this is necessary—but what its approach means in practice. Appellate decisions such as *Furgatch* and *Christian Action Network* give different answers not because they disagree about whether *Buckley* and *Massachusetts Citizens for Life* "apply" but because these decisions do not give unambiguous answers to the myriad situations that arise. A judgment along the lines of "Dear Board, you must follow *Buckley*" or "apply the state law only to explicit advocacy" would not dictate one outcome rather than another in the sort of cases about which WRTL is concerned. To relapse into jargon, the injury WRTL

fears is not redressable by an order of the kind it seeks. Perhaps a more elaborate injunction, one that tried to lay down the right answer in *Travis* and other cases besides, could provide relief, but such an order would exceed the constitutional powers of the federal judiciary under Article III. A court is not permitted to prescribe how a state must deal with disputes that have never arisen and may never do so, or with disputes that third parties have with the Board. Such a foray is the paradigm of an advisory opinion. It would also be obnoxious to threaten state officials with penalties for contempt of court if at some future time they were to interpret *Buckley* and *Massachusetts Citizens for Life* differently from the way the district court interprets it. Review of the Board's future decisions through the contempt mechanism, rather than by an action in state court, would pose serious problems under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). When the only way to make relief effective is to write an order so broad that it becomes advisory, and so meddlesome that it effectively appoints a federal judge as the administrator of the state statute, a court can be sure that the case is not justiciable. The nature of the problem is incompatible with a one-injunction-resolves-all solution.

None of this is to deny that WRTL's concerns are genuine. The Board's decision in *Travis* was not exactly reassuring, though the Attorney General may prevent anything from coming of it. But, as the district court perceived, the real threat is not from the Board but from the private actions authorized by Wis. Stat. §§ 11.60, 11.66. The candidates whose complaints led to the decision in *Travis* also filed suits against the organizations responsible for the ads. State judges issued temporary restraining orders against further publication of the advertisements, and Wisconsin's court of appeals refused to disturb these orders despite the fact that they were prior restraints of speech. Three cases against the WMC Issues Mobilization Council, Inc., have been consolidated for decision before one judge, and Travis's suit against Americans for Limited Terms is pending before a different judge. Decisions in these cases could bode ill for WRTL— although the fact that another state court, after agreeing with *Furgatch*, nonetheless dismissed a suit by the Board suggests that the risk is slight. See *Elections Board v. Wisconsin Manufacturers and Commission*, No. 97 CV 1729 (Dane County Cir. Ct. Jan. 16, 1998). At all events, federal litigation under § 1983 is no substitute for the usual ways to protect a legal interest threatened by a third party's suit: intervention or appearance as *amicus curiae*.

Nothing within a district court's power would require the state judges to decide these cases one way rather than another. Under the supremacy clause, the state courts must follow the Constitution of the United States, but not necessarily our interpretation of the Constitution. Only the parties need respect a decision by an inferior federal court. Yet the candidates who filed the state cases are not parties to this one. Neither are the state judges—nor could they be made parties. The only defendants are the Attorney General and members of the Board. Against them alone would relief run. If sued in state court by candidates offended by its flyers, brochures, or ads, WRTL could not plead a federal judgment as a defense; the candidates, not parties to the federal case, would not be bound by the outcome. See *Baker v. General Motors Corp.*, — U.S. ——, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); Fed.R.Civ.P. 65(d) (an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order"). Potential injury from decisions by state courts in private litigation is not redressable by any order that could be issued in this case.

This conclusion puts WRTL to a hard choice. It may steer clear of controversy pending the outcome of the litigation now wending its way through state court; it may make its views known to the state judges; or it may take its chances and rely on the precedential force of the Supreme Court's decisions (and the support of Wisconsin's Attorney General) if it finds itself a defendant in court or a respondent before the Board. What it may not obtain, given the limitations of Article III, is an order that attempts to resolve a controversy that has not yet arisen

and may never arise. The judgment of the district court is vacated, and the case is remanded with instructions to dismiss the complaint for want of jurisdiction.

FLAUM, Circuit Judge, dissenting.

I am unable to join the Majority's conclusion that WRTL's suit is not justiciable. In my view, the Majority's position rests on an incorrect characterization of the nature of WRTL's suit.

The Majority holds that WRTL's suit is nonjusticiable for two reasons: WRTL's requested relief calls for an advisory opinion, *supra* at 1186–87; and WRTL has no standing because its alleged injury is not redressable by the relief it seeks, *id.* at 1187. (The Opinion also suggests, but does not hold, that WRTL lacks standing because its fear of prosecution is not well-founded. *Id.* at 1184–85.) The Majority reaches these conclusions because it understands WRTL to be asking the federal courts to "instruct the defendants that the state court will (à la *Buckley*) or must (à la *Massachusetts Citizens for Life*) treat the state's law as inapplicable to candidate comparisons and other forms of implicit advocacy". *Id.* at 1185. In other words, the Majority states, WRTL is asking this Court "to say[ ] that the Board must proceed as if *Buckley* and *Massachusetts Citizens for Life* were written directly into the Wisconsin statute." *Id.* at 1186. *See also id.* at 1184 ("WRTL ... filed this suit ... seeking declaratory and injunctive relief that would compel these state officials to administer the state election laws in accord with *Buckley* and *Massachusetts Citizens for Life.*"). The Opinion then proceeds, I believe correctly, to explain why such relief would be both inappropriate and ineffective in addressing WRTL's core concerns about speech-chilling prosecutions.

I respectfully suggest that this analysis, although internally consistent, rests on a faulty premise. WRTL asked the district court to declare the Wisconsin statute (or portions thereof) unconstitutional on its face* and, furthermore, to enjoin enforcement of the law. Striking down the statute

as unconstitutional on its face would not require this Court to issue an advisory opinion about how Wisconsin courts should interpret *Buckley* and *Massachusetts Citizens for Life* in various cases against third parties, as the Majority fears. If the statute were declared unconstitutional, there would be no valid enactment for the state courts to interpret. Moreover, striking down the citizen suit provisions as unconstitutional would effectively put an end to such suits altogether, which would seem to obviate the Majority's redressability concern.

The Majority, however, interprets WRTL's suit to be asking for the federal courts to impose a narrowing construction on the Wisconsin statute (or to enjoin the state courts from failing to employ such a construction) that would force the state courts to adhere to *Buckley* and other precedent. This understanding of WRTL's suit is contradicted by WRTL's argument, made in response to the district court's decision to abstain, that no such narrowing construction is appropriate or available. *See* Appellant's Br. at 20–25 (arguing that the district court erred in abstaining because the statutes at issue are not susceptible to a limiting construction).

Although the Majority acknowledges at one point that this is a facial attack on the Wisconsin statute—though an "untenable" one, in its view—it glosses over this point with the statement that "actual injury and redressability are essential no matter how the challenge is cast". *Supra* at 1186. Of course, I agree with this statement in principle, but since the Majority never holds that WRTL lacks a credible threat of prosecution, and the redressability concern would vanish if we were to declare the citizen suit provisions unconstitutional, I believe that WRTL's suit meets both the injury and the redressability criteria. *See Steel Co. v. Citizens for a Better Env't*, — U.S. —, 118 S.Ct. 1003, 1018, — L.Ed.2d — (1998) (noting that a plaintiff seeking injunctive relief to prevent "threatened injury" or "the imminence of a future violation" satisfies the injury and re-

---

* Specifically, WRTL contends that the Wisconsin statutes impose unconstitutional registration requirements, both by defining "political committees" too broadly and by failing to exempt from registration certain kinds of not-for-profit organizations. WRTL also claims that the Board enforcement and citizen suit provisions permit unconstitutional prior restraints on protected speech.

dressability criteria when "the injunctive relief requested would remedy that alleged harm"). The Majority suggests that WRTL's facial challenge would fail because "the Supreme Court of Wisconsin has no less ability to construe the state law in a constitutional fashion than the Supreme Court of the United States displayed in *Buckley*." *Supra* at 1186. This may turn out to be correct, but in my view the merits of this facial challenge (and the related issue of abstention) require the attention of the court.

Thus, it is my judgment that the Majority opinion, though well-reasoned, addresses the wrong questions. Although it is not certain that the merits would ultimately be reached, given the reasons for abstention presented by the district court, I cannot conclude that WRTL's suit is nonjusticiable. Accordingly, I respectfully dissent.