**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 26 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

CITIZENS FOR RESPONSIBLE
GOVERNMENT STATE POLITICAL
ACTION COMMITTEE; STEVE
DURHAM;  PHIL PANKEY;
COLORADO STATE REPUBLICAN
CENTRAL COMMITTEE; COLORADO
REPUBLICANS FOR CHOICE, an
unincorporated Colorado political
committee; CROWN POINT
COMMUNICATIONS, INC., a Colorado
corporation; DOROTHY S. WHAM;
WILLIAM THIEBAUT, JR.; DONNA
MULLINS GOOD; COLORADO
EDUCATION ASSOCIATION
EDUCATION POLITICAL ACTION
COMMITTEE, a Colorado nonprofit
corporation,

      Plaintiffs - Appellees and
      Cross-Appellants,

and

COLORADO RIGHT TO LIFE
COMMITTEE, INC.; CITIZENS FOR
RESPONSIBLE GOVERNMENT, INC.;
LIBERTARIAN PARTY OF
COLORADO; LIBERTARIAN PARTY
OF DENVER; SANDRA JOHNSON;
DOUGLAS E. ANDERSON; DAVID
AITKEN; FRED GREENE; FIREARMS
COALITION OF COLORADO, INC.;
WILLIAM PITTMAN; GREG
WALERIUS,

Nos. 99-1414, 99-1431, 99-1434 &
99-1435

        Plaintiffs - Cross-Appellants,

vs.

DONETTA DAVIDSON, in her official
capacity as the Secretary
of State for the State of Colorado,

        Defendant - Appellant and
        Cross-Appellee.

REPUBLICAN NATIONAL
COMMITTEE; COMMON CAUSE;
LEAGUE OF WOMEN VOTERS OF
COLORADO; ASSOCIATION OF
COMMUNITY ORGANIZATIONS FOR
REFORM NOW, COLORADO
CHAPTER,

        Amici Curiae.

TERRY L. PHILLIPS,

        Plaintiff-Appellee and
        Cross-Appellant,

vs.

DONETTA DAVIDSON, Secretary of
State of the State of Colorado,

        Defendant-Appellant and
        Cross-Appellee.

Nos. 99-1570 & 99-1574

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**(D.C. Nos. 96-S-2844, 96-S-2973, 97-S-221 & 98-S-2412)**

_____

In appeal nos. 99-1414, 99-1431, 99-1434, 99-1435:

Maurice G. Knaizer, Deputy Attorney General, States Services Section (Ken Salazar, Attorney General, Paul Farley, Special Assistant Attorney General, with him on the briefs) Denver, Colorado, for the Defendant - Appellant - Cross-Appellee.

James Bopp, Jr. (Heidi K. Meyer, with him on the briefs), Bopp, Coleson & Bostrom, Terre Haute, Indiana, for Plaintiff - Appellee - Cross-Appellant Citizens for Responsible Government State Political Action Committee and Plaintiffs - Cross-Appellants Colorado Right to Life Committee, Inc., et al.; Timothy M. Tymkovich, Hale, Hackstaff, Tymkovich & Erkenbrack, LLP, Denver, Colorado, for Plaintiffs - Appellees - Cross-Appellants Steve Durham et al. and Plaintiffs - Cross-Appellants Libertarian Party of Colorado et al.; Blain D. Myhre (Edward T. Ramey, with him on the briefs), Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, Colorado, for Plaintiffs - Appellees - Cross-Appellants Colorado Republicans for Choice et al.

Robert F. Hill (Jennifer H. Hunt, with him on the brief) Hill & Robbins, P.C., Denver, Colorado, for the Amici Curiae Common Cause and the League of Women Voters of Colorado.

Michael W. Grebe, General Counsel, Thomas J. Josefiak, Chief Counsel, and Alexander N. Vogel, Deputy Counsel, Republican National Committee, Washington, D.C., filed an amicus brief for the Republican National Committee.

Gregory Luke, John C. Bonifaz and Brenda Wright, National Voting Rights Institute, Boston, Massacushetts, filed an amicus brief for the Association of Community Organizations for Reform Now, Colorado Chapter.

In appeal nos. 99-1570, 99-1574:

Maurice G. Knaizer, Deputy Attorney General, States Services Section (Ken Salazar, Attorney General, with him on the briefs) Denver, Colorado, for the Defendant - Appellant - Cross-Appellee.

Blain D. Myhre (Edward T. Ramey, with him on the briefs) Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, Colorado, for the Plaintiff - Appellee - Cross-Appellant.

Before **KELLY**, **HENRY**, Circuit Judges, and **SHADUR**, District Judge.[*]

**KELLY**, Circuit Judge.

These appeals arise out of four cases filed in the District of Colorado. In each case, the plaintiffs challenged one or more provisions of Colorado's Fair Campaign Practices Act ("FCPA"), Colo. Rev. Stat. §§ 1-45-101 to -118, on First and Fourteenth Amendment grounds. The district court dismissed some plaintiffs for lack of standing, upheld most of the challenged provisions, and invalidated others as unconstitutional. All parties appealed, addressing various subsections of Colo. Rev. Stat. §§ 1-45-103 (Definitions), 1-45-104 (Contribution Limits), 1-45-105 (Voluntary Spending Limits), 1-45-106 (Unexpended Contributions), and 1-45-107 (Independent Expenditures).[1] While the appeals were pending, the Colorado General Assembly substantially amended the FCPA. See Act of March 15, 2000, H.B. 00-1194, § 12, 2000 Colo. Legis. Serv. 36 (West) [hereinafter "H.B. 00-1194"]. Various definitions in § 103 were added, deleted, or amended. Section 104 was repealed and replaced with § 105.3. Section 105 was

---

[*]The Honorable Milton I. Shadur, United States Senior District Judge for the Northern District of Illinois, sitting by designation.

[1] Hereinafter, the title and article will be omitted from textual references to FCPA provisions. For example, "§ 103" will be used to refer to Colo. Rev. Stat. § 1-45-103.

repealed and not replaced. Section 106(1) was amended; § 106(2) was deleted. Section 107 was unaffected.

Because we hold that the challenges to former §§ 103(12), 104, 105, 106(2) are now moot, we vacate the portions of the district court's orders that deal with those sections or with individual plaintiffs' standing to challenge them. The appeal as to § 106(1) is dismissed. We reverse the district court's judgment as to §§ 103(7), 103(10), 103(11), 107(1), and 107(2).

### Discussion

As stated above, this case includes appeals and cross-appeals from four separate district court actions. Our review of the record, the parties' notices of appeal, and the briefs indicates that the following provisions of the (pre-H.B. 00-1194) FCPA are at issue here: Colo. Rev. Stat. §§ 1-45-103(7), -103(10), -103(11), -103(12), -104(1), -104(2), -104(4), -104(5), -104(7), -105 generally, -105(1), -105(2), -105(3), -105(4), -105(5), -105(6), -105(7), -106(1), -106(2), -107(1), and -107(2).[2] In addition to the substantive

---

[2] The notice of appeal from No. 96-S-2973, Durham et al. v. Buckley, also purports to challenge § 104(3). That subsection was neither raised nor ruled upon in the district court, nor was it discussed in any of the parties' appellate briefs. The notice of appeal from No. 96-S-2844, CRLC et al. v. Buckley, purports to appeal § 107(3). In response to Colorado's defense of that provision, Colo. Answer Br. at 41-42 (Jan. 14, 2000), all plaintiffs denied that § 107(3) was at issue on appeal. CRLC et al. Reply Br. at 14 n.4 (Jan. 28, 2000); Durham/CRC et al. Reply Br. at 18 (Jan. 28, 2000). We therefore do not address either provision.

validity of the statutes, the parties have also briefed numerous questions relating to standing and ripeness. As explained below, many of the foregoing issues have been mooted by the passage of H.B. 00-1194.

## I.      Mootness

Because "the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction," the court must determine whether a case is moot before proceeding to the merits. McClendon v. City of Albuquerque, 100 F.3d 863, 867 (10th Cir. 1996) (citing Beattie v. United States, 949 F.2d 1092, 1093 (10th Cir. 1991)). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." City of Erie v. Pap's A.M., 120 S. Ct. 1382, 1390 (2000) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (citation omitted)). The crucial question is whether "granting a present determination of the issues offered . . . will have some effect in the real world." Kennecott Utah Copper Corp. v. Becker, 186 F.3d 1261, 1266 (10th Cir. 1999) (quotations and citations omitted). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) (quotations and citations omitted). The parties must continue to have a personal stake in the outcome throughout the case.

## A. Generally

In general, the repeal of a challenged statute is one of those events that makes it "absolutely clear that the allegedly wrongful behavior" – here, the threat of prosecution under one of the repealed sections – "could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 120 S. Ct. 693, 708 (2000) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)). Indeed, this court has held that "[a] declaratory judgment on the validity of a repealed [statute] is a textbook example of advising what the law would be upon a hypothetical state of facts." Nat'l Adver. Co. v. City & County of Denver, 912 F.2d 405, 412 (10th Cir. 1990) (quotations and citations omitted). The parties have no legally cognizable interest in the constitutional validity of an obsolete statute. Thus, the parties' challenges to the single-entity requirement in § 103(12), to § 105 as a whole and with respect to particular subsections, and to § 106(2) are clearly moot. See H.B. 00-1194, § 2 (deleting challenged language in Colo. Rev. Stat. § 1-45-103(12)); § 12 (repealing Colo. Rev. Stat. § 1-45-105); § 4 (deleting Colo. Rev. Stat. § 106(2)).

The General Assembly also repealed § 104, see H.B. 00-1194, § 12, but enacted a new contribution limitation statute in its place. See H.B. 00-1194, § 1, codified at Colo. Rev. Stat. § 1-45-105.3 (2000). Where a new statute "is sufficiently similar to the repealed [statute] that it is permissible to say that the challenged conduct continues," the controversy is not mooted by the change, and a federal court continues to have

jurisdiction.  <u>Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville</u>, 508 U.S. 656, 662 & n.3 (1993); <u>see also</u> <u>Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1310 (11th Cir. 2000) ("[A] superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law.") (quotations and citation omitted); <u>Rosenstiel v. Rodriguez</u>, 101 F.3d 1544, 1548 (8th Cir. 1996).  We have carefully compared each challenged provision in § 104 to the most analogous provision in § 105.3, and we conclude that the differences between the statutes are too numerous and too fundamental to preserve our jurisdiction over the § 104 challenges.  <u>Compare</u> Colo. Rev. Stat. § 1-45-104(2), -104(5) (1999), <u>with</u> Colo. Rev. Stat. § 1-45-105.3(1) (2000); <u>compare</u> Colo. Rev. Stat. § 1-45-104(4) (1999), <u>with</u> Colo. Rev. Stat. § 1-45-105.3(2)(c) (2000); <u>compare</u> Colo. Rev. Stat. § 1-45-104(7) (1999), <u>with</u> Colo. Rev. Stat. § 1-45-105.3(3) (2000).[3] Accordingly, the parties' appeals with respect to subsections (1), (2), (4), (5), and (7) of § 104 are all moot.

### B.  Standing/Ripeness

A number of appellants and cross-appellants also contend that the district court erred in upholding or denying the standing of various parties to challenge the contribution limitations in § 104 or the voluntary spending scheme set forth in § 105.  It is not

---

[3] There is no analogue to Colo. Rev. Stat. § 1-45-104(1) (1999) in § 1-45-105.3 (2000).

necessary for this court to decide whether a party had standing to assert a claim that has now become moot. See Arizonans, 520 U.S. at 66. Accordingly, we need not resolve which parties did and did not have standing to assert their claims under §§ 104 and 105. For similar reasons, we need not determine whether or not the mooted claims were ripe.

### C.     Arguments Against Mootness By Colorado and Amici

Colorado and Amici insist that live controversies persist with respect to §§ 103(12), 104, 105, and 106(2). Colorado contends that the claims are not moot because Plaintiffs may eventually seek attorneys' fees as prevailing parties, and because there are or may be prosecutions under the repealed provisions. Amici Common Cause and the League of Women Voters claim that Common Cause's lawsuit challenging the validity of H.B. 00-1194's passage has placed the Act "in jeopardy of being invalidated," thereby leaving the constitutionality of the pre-amendment statute "still very much in controversy." We find all three arguments to be without merit.

### 1.     Attorneys' Fees

According to Colorado, the appeals regarding §§ 103(12), 104, 105, and 106(2) are not moot because the plaintiffs may eventually seek attorneys' fees. There is substantial Supreme Court and Tenth Circuit precedent to the contrary.

As the Secretary correctly notes, the general rule is that "an interest in attorney's fees is insufficient to create an Article III case or controversy where a case or controversy does not exist on the merits of the underlying claim." In re Western Pac. Airlines, Inc.,

181 F.3d 1191, 1196 (10th Cir. 1999) (quoting Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1348 n.4 (10th Cir. 1994) (citing Lewis v. Continental Bank Corp, 494 U.S. 472, 480 (1990))). The Secretary argues that this case falls under an exception to the general rule for fees "already incurred," relying heavily on the following language in Dahlem v. Board of Education: "While a claim of entitlement to attorney's fees does not preserve a moot cause of action, the expiration of the underlying cause of action does not moot a controversy over attorney's fees already incurred." 901 F.2d 1508, 1511 (10th Cir. 1990) (citations omitted, emphasis added). This language means only that a plaintiff may still recover (and a defendant may still contest) fees even when the merits have been rendered moot. Id. The quote does not mean that an otherwise moot issue is revived whenever a prevailing party requests or might request fees. See Lewis, 494 U.S. at 480 (cautioning lower courts "to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements on even constitutional issues obtained, solely in order to obtain reimbursement of sunk costs").

With respect to Colorado's arguments regarding the merits of whether the plaintiffs are entitled to fees, we note that a joint motion was filed in district court to stay all proceedings concerning attorneys' fees pending appeal, and that no fee request has been filed. Our jurisdiction is based on our power to review "final decisions of district courts." 28 U.S.C. § 1291. Without a final decision from the district court as to whether Plaintiffs are entitled to fees, the question is not before this court.

### 2. Pending and Possible Future Prosecutions

The Secretary also argues that the case is not moot because "there is an outstanding state case involving a prosecution under the prior statute." Colo. Resp. Br. re: Mootness at 6 (June 19, 2000) (citing League of Women Voters v. Davidson, No. 2000-CA-000216 (ROA filed in Colo. Ct. App. on May 22, 2000)). League of Women Voters, however, does not involve any of the repealed provisions. Instead, it relates to §§ 103(7), (10), (11), and 107, all of which were unaffected by H.B. 00-1194.

The Secretary also claims that the challenges to § 104 are not moot because the State may, at some indefinite point in the future, begin prosecuting persons or organizations for pre-repeal violations, thereby having "a residual effect on persons who violated the limits before the district court issued its injunction." Resp. Br. re: Mootness at 6 (June 19, 2000). We agree with the Eighth Circuit that an allegation of "collateral consequences in a separate lawsuit . . . does not fall within any exception to the mootness doctrine . . . ." Nebraska v. Cent. Interstate Low-Level Radioactive Waste Compact Comm'n, 187 F.3d 982, 987 (8th Cir. 1999); accord United States v. Balint, 201 F.3d 928, 937 n.2 (7th Cir. 2000) ("[T]he defendants' vulnerability to a future civil suit for contribution by a third party not before us does not preserve this appeal."). The Seventh Circuit case cited by the State, Charles v. Daley, 749 F.2d 452 (7th Cir. 1984), is not inconsistent with these holdings. Although the court in that case found the possibility that the plaintiffs would be prosecuted under pre-amendment statutes to be "insufficiently

speculative" to moot their challenges, id. at 457, it also noted the basic principle that "federal courts are without power to decide questions that cannot affect the rights of the litigants in the case before them . . . ." Id. at 456 (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). In this case, our decision to vacate the district court's orders regarding the repealed sections does not extinguish the State's right to investigate and prosecute pre-repeal violations, nor does it impair the rights of potential defendants' to challenge the constitutionality of the old statutes when and if such prosecutions actually occur. Cf. Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 589 (1961) (agreeing with lower court that if threat of prosecution under arguably superseded state statute arose, and if a state court decided that the statute was still applicable, "that would be time enough to consider that statute's validity"). Thus, Colorado's potential prosecutions argument fails.

### 3.      Pending State Court Challenge to H.B. 00-1194

Amici Common Cause and the League of Women Voters raise one additional argument against mootness: that Amicus Common Cause has a pending lawsuit in state court challenging the validity of H.B. 00-1194's passage under Colorado's Open Meetings Act. Colo. Common Cause, Inc. v. Colorado, No. 00-CV-4156 (filed June 22, 2000). According to Amici, H.B. 00-1194 is thus "in jeopardy of being invalidated," thereby leaving the constitutionality of the repealed provisions "still very much in controversy . . . ." Amici Br. in Opp'n to Mootness at 2-3 (June 26, 2000). At least one

circuit has summarily rejected this argument as allowing parties to "play off one court system against another." Miller v. Benson, 68 F.3d 163, 164-65 (7th Cir. 1995) ("Whatever the outcome of the state case, this federal case . . . lacks any continuing significance."). Of course, the amici are not parties, but it is noteworthy that Common Cause's state lawsuit was filed only four days before its brief was filed in this court – more than three months after the allegedly defective passage of H.B. 00-1194. Even if the timing of Common Cause's lawsuit is purely coincidental, we do not believe that the mere filing of a lawsuit is sufficient to resurrect Article III jurisdiction over the repealed statutes.[4]

## II.    Failure to Preserve § 106(1) for Appeal

§ 106(1) restricts the use of unexpended campaign contributions by providing a list of approved organizations and causes to which such funds may be distributed after a campaign ends. In pertinent part, the statute provides that unexpended campaign contributions to a candidate committee may be:

    (A)    Contributed to a political party;
    (B)    Contributed to a candidate committee established by the same candidate for a different public office, subject to the limitations set forth in section 1-45-105.3(4)(b) and (c), if the candidate committee making such a contribution is affirmatively closed by the candidate no later than ten days

---

[4] Amici's brief was vigorously opposed by the plaintiffs, who moved this court to strike the brief from the record, to award them attorneys' fees for the time they spent responding to the brief, and to enjoin amici from further filings. CRLC et al. Opp'n to Mot. of Amici for Leave to File at 2, 6 (June 30, 2000). That motion is denied.

after the date such a contribution is made;

    (C)    <u>Donated to a charitable organization recognized by the internal revenue service;</u>

    (D)    Returned to the contributors, or retained by the committee for use by the candidate in a subsequent campaign.

(II)    In no event shall contributions to a candidate committee be used for personal purposes not reasonably related to supporting the election of the candidate.

Colo. Rev. Stat. § 1-45-106(1)(a) (2000), <u>as amended by</u> H.B. 00-1194 (emphasis added).

In addition to the uses described above:

[A] person <u>elected to a public office</u> may use unexpended campaign contributions held by the person's candidate committee for any of the following purposes:

(I)    Voter registration;

(II)    Political issue education, which includes obtaining information from or providing information to the electorate;

(III)    Postsecondary educational scholarships;

(IV)    To defray reasonable and necessary expenses related to mailings and similar communications to constituents;

(V)    Any expenses that are directly related to such person's official duties . . . .

Colo. Rev. Stat. § 1-45-106(1)(b) (2000), <u>as amended by</u> H.B. 00-1194 (emphasis added).

Of the four cases below, only the plaintiffs from No. 97-S-2973 -- the "Durham Plaintiffs" -- challenged § 106(1). 2 J.A. 356-57, at ¶¶ 168-79 (Am. Compl. by Durham et al., Claim XIV, July 23, 1997). Specifically, they take issue with the portion of the statute that prohibits the donation of unexpended campaign contributions to charitable organizations not recognized by the Internal Revenue Service, Durham/CRC et al. Br. at 77-78 (Dec. 15, 1999); Durham/CRC et al. Reply Br. at 18-19 (Jan. 28, 2000), arguing that the restriction infringes on First Amendment freedoms. Because Plaintiffs have

- 14 -

failed to preserve the issue for appeal, we have no jurisdiction to reach the merits of this claim.

On February 5, 1998, the district court dismissed Durham Plaintiff Phil Pankey, a Colorado State Senator, "from all claims in this civil action except the following: (1) Panckey's [sic] claim is limited to the carryover provision contained in Colo. Rev. Stat. § 1-45-106(2) (1997)." 8 J.A. 1876, at ¶ 2. Of the thirteen original Durham Plaintiffs, only Senator Pankey had standing to challenge § 106(1). Thus, the district court's dismissal of Pankey's § 106(1) claim effectively terminated the claim in its entirety.

Accordingly, the district court never decided the § 106(1) challenge on the merits. Indeed, the court's first and last reference to § 106(1) after it dismissed the claim in February 1998 was in a footnote to its final order in <u>August 1999</u>.

> Although Plaintiff Panckey [sic] continued to argue his Claim XIV in Civil Action 96-S-2973, challenging the regulation of unexpended campaign contributions set forth in Colo. Rev. Stat. § 1-45-106(1), the court's records reflect that Plaintiff Panckey's [sic] only remaining claim is Claim XV in Civil Action 96-S-2973, wherein he challenges the carryover provision contained in Colo. Rev. Stat. § 106(2). (Court's Order dated February 5, 1998).[5]

<u>Citizens for Responsible Gov't State Political Action Comm. v. Buckley</u>, 60 F. Supp. 2d 1066, 1073 n.2 (1999) ["<u>CRGS-PAC v. Buckley</u>"].

---

[5] The court then noted that "[i]n any event, subsequent legislative amendment to § 106(1) renders moot Panckey's [sic] challenge." <u>CRGS-PAC v. Buckley</u>, 60 F. Supp. 2d at 1073 n.2. Given that the challenge had been dismissed over a year before, this statement is dictum.

In their brief to this court, the Durham Plaintiffs suggest that the § 106(1) claim was never dismissed: "the court without explanation concluded that the challenge to § 106(1) had been dismissed." Durham/CRC et al. Br. at 11 (Dec. 15, 1999) (citing CRGS-PAC v. Buckley, 60 F. Supp. 2d at 1073 n.2). In fact, the record indicates that not only was the claim dismissed, but that Plaintiffs actually consented to the dismissal in open court:

| | |
|---|---|
| Court: | Mr. Pankey is staying in then as candidate/candidate committee only for the purposes of challenging the carryover provision which is what? |
| Counsel: | 106. |
| Court: | 106(2). Unexpended campaign contributions. |
| Counsel: | Your Honor, and also for 104, contributions that he can accept. |

15 J.A. 3422 (Tr. of Hr'g on Mot. for Summ. J., Jan. 30, 1998); see also 8 J.A. 1875-76 (Order, Feb. 5, 1998) ("incorporat[ing] by reference [the] conclusions and rulings made in open court on January 30, 1998 and February 4, 1998" and dismissing Senator Pankey's § 106(1) claim). Ordinarily, a party may not appeal from a consent judgment. Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 526 (10th Cir. 1992).

We recognize that this case involved a massive number of claims and parties, and that what appears to be consent on paper may in fact have been confusion. But even if we allow Plaintiffs the benefit of the doubt as to whether they consented to the dismissal of their § 106(1) challenge, we cannot ignore the fact that neither their notice of appeal nor their docketing statement referenced or attached the district court's order dated February 5, 1998. See Fed. R. App. P. 3(c)(1); cf. Trotter v. Regents of Univ. of New Mexico, 219

- 16 -

F.3d 1179, 1184 (10th Cir. 2000). We therefore decline to address the § 106(1) claim. See Smith v. Barry, 502 U.S. 244, 248 (1992) (holding that the requirements of Fed. R. App. P. 3(c) are jurisdictional); Cox v. Phelps Dodge Corp., 43 F.3d 1345, 1347 n.1 (10th Cir. 1994) (noting that courts must consider jurisdictional issues sua sponte, even in the absence of briefing or argument) (citing St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 537 (1978)).

**III.    Merits**

Plaintiffs' challenges to §§ 103(7), 103(10)(a), 103(11), 107(1), and 107(2) remain viable. Section 103 defines terms used throughout the FCPA, including independent expenditure, political committee, and political message. Section 107(1) imposes notice and reporting requirements for independent expenditures. Section 107(2) provides mandatory content requirements for political messages produced by independent expenditures.

"Any judicial consideration of the constitutionality of campaign finance reform legislation must begin . . . with the comprehensive decision in Buckley [v. Valeo, 424 U.S. 1 (1976)]." Kruse v. City of Cincinnati, 142 F.3d 907, 911 (6th Cir. 1998). In Buckley, the Supreme Court addressed a challenge to several provisions of the Federal Election Campaign Act ("FECA") of 1971. One provision imposed a $1,000 annual cap on "expenditure[s] . . . relative to a clearly identified candidate." Buckley, 424 U.S. at 41 (quoting 18 U.S.C. § 608(e)(1) (1976)). In order to save the statute from constitutional

infirmity on vagueness grounds, the Court held that "relative to" must be narrowly "construed to apply only to expenditures for communications that in express terms advocate the election or defeat of a clearly identified candidate." Id. at 44 (emphasis added).

> The Buckley Court articulated the rationale for its holding as follows:
>
> [T]he distinction between discussion of issues and candidates and advocacy of election or defeat of candidates may often dissolve in practical application. Candidates, especially incumbents, are intimately tied to public issues involving legislative proposals and governmental actions. Not only do candidates campaign on the basis of their positions on various issues, but campaigns themselves generate issues of public interest.

Id. at 42 (footnote omitted). This distinction between permissible restrictions on "express advocacy" and impermissible restrictions on "issue advocacy" remains viable, and provides the constitutional framework for our analysis. FEC v. Mass. Citizens For Life, Inc., 479 U.S. 238, 249 (1986) [hereinafter "MCFL"]; FEC v. Colo. Republican Fed. Campaign Comm., 59 F.3d 1015, 1023 n.10 (10th Cir. 1995), rev'd on other grounds, 518 U.S. 604 (1996).

In order to counter the tendency of the line between protected "issue advocacy" and regulable "express advocacy" to "dissolve in practical application," the Buckley Court construed the allegedly vague statute at issue as applicable only "to communications containing express words of advocacy of election or defeat . . . ." 424 U.S. at 44 n.52. According to the Court, only communications containing words "such as 'vote for,' 'elect,' 'support,' 'cast your ballot for,' 'Smith for Congress,' 'vote against,'

- 18 -

'defeat,' 'reject,'" would be subject to regulation as "express advocacy." Id. Ten years later, the Court clarified that express words of advocacy were not simply a helpful way to identify "express advocacy," but that the inclusion of such words was constitutionally required. MCFL, 479 U.S. at 249. Thus, communications that do not contain express words advocating the election or defeat of a particular candidate are deemed issue advocacy, which the First Amendment shields from regulation. E.g., Colo. Republican Fed. Campaign Comm., 59 F.3d at 1023 & n.10; Vt. Right to Life Comm., Inc. v. Sorrell, 221 F.3d 376, 386-87 (2d Cir. 2000); Iowa Right to Life Comm., Inc. v. Williams, 187 F.3d 963, 969 (8th Cir. 1999); FEC v. Christian Action Network, Inc., 110 F.3d 1049, 1051 (4th Cir. 1997); Faucher v. FEC, 928 F.2d 468, 470-72 (1st Cir. 1991).

### A. Definitions of "Independent Expenditure," § 103(7), "Political Committee," § 103(10)(a), and "Political Message", § 103(11)

We begin with the plain language of the challenged provisions. The FCPA defines an "independent expenditure" as:

> payment of money by any person[6] for the purpose of advocating the election or defeat of a candidate, which expenditure is not controlled by, or coordinated with, any candidate or any agent of such candidate. 'Independent expenditure' includes expenditures for political messages which unambiguously refer to any specific public office or candidate for such office, but does not include expenditures made by persons, other than political parties and political committees, in the regular course and scope of their business and political messages sent solely to their members.

---

[6] Person is defined as "any natural person, partnership, committee, association, corporation, labor organization, political party, or other organization or group of persons." Colo. Rev. Stat. § 1-45-103(9).

- 19 -

Colo. Rev. Stat. § 1-45-103(7) (2000) (emphasis added). A "political message," which is incorporated in the definition of "independent expenditure," is:

> a message delivered by telephone, any print or electronic media, or other written material which advocates the election or defeat of any candidate or which unambiguously refers to such candidate.

Colo. Rev. Stat. § 1-45-103(11) (2000) (emphasis added). Any person making an "independent expenditure" over $1,000 is subject to reporting and notice requirements, see Colo. Rev. Stat. § 1-45-107(1) (2000), and to content requirements. See Colo. Rev. Stat. § 107(2) (2000). A willful and intentional violation of § 107(1) or (2) is a class two misdemeanor. See Colo. Rev. Stat. § 113(1) (2000). A "political committee," which incorporates both § 103(7) and (11), and which is itself -- somewhat circuitously -- incorporated in § 103(7), is:

> two or more persons who are elected, appointed, or chosen, or have associated themselves, for the purpose of making contributions to candidate committees, issue committees, political parties, or other political committees, or for the purpose of making independent expenditures.

Colo. Rev. Stat. § 1-45-103(10)(a) (2000) (emphasis added). Political committees are subject to the FCPA's contribution restrictions, see Colo. Rev. Stat. § 1-45-105.3 (2000), reporting requirements, see Colo. Rev. Stat. §§ 1-45-108(1), -108(2), -108(2.3), -108(2.5), -109 (2000), and registration requirements. See Colo. Rev. Stat. § 1-45-108(3), 108(4) (2000). Violations of the foregoing provisions are punishable by criminal and civil penalties. See Colo. Rev. Stat. § 1-45-113 (2000).

Without taking evidence or making factual findings, the district court ruled on

June 18, 1997, that § 103(7) and (10)(a) -- and implicitly § 103(11), by virtue of its incorporation in § 103(7) -- did not apply to Plaintiffs Colorado Right to Life, Inc. ("CRLC") or Citizens for Responsible Government, Inc. ("CRG"). 2 J.A. 288-90. The court therefore dismissed the § 103 claims "on the merits." Id. at 290. CRLC and CRG challenge both rulings. They urge this court to hold that the plain language of § 103(7), (10)(a), and (11) renders many substantive provisions of the FCPA applicable to organizations – like CRLC and CRG – that engage in "issue advocacy" but not "express advocacy." CRLC et al. Br. at 24-27 (Dec. 16, 1999). Because "issue advocacy" is core First Amendment speech, Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 632 (1980), the plaintiffs argue that the challenged definitions are substantially overbroad, Sec. of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 964-65 (1984), not readily susceptible to a narrowing construction, Virginia v. Am. Booksellers' Ass'n, 484 U.S. 383, 397 (1988), and therefore facially unconstitutional. CRLC et al. Br. at 27-39 (Dec. 16, 1999). In response, Colorado claims that the district court was correct to defer to the Secretary's narrow construction, under which § 103(7), (10)(a), and (11) apply only to groups formed for the purpose of engaging in express advocacy. Colo. Answer Br. at 13-21. Colorado asks us to affirm the district court's ruling that because the statutes are not applicable to the plaintiffs, they have no standing to challenge them. In any case, the State argues, the statutes are not unconstitutional.

> **1.  Do CRLC and CRG Have Standing to Challenge § 103(7), (10)(a), and (11)?**

We construe the district court's order of June 18, 1997, as a dismissal for lack of subject matter jurisdiction -- i.e., for lack of standing -- under Rule 12(b)(1) or 12(h)(3) of the Federal Rules of Civil Procedure. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998). We review a dismissal for lack of subject matter jurisdiction de novo, applying the same standard used by the district court. Sac & Fox Nation of Okla. v. Cuomo, 193 F.3d 1162, 1165 (10th Cir. 1999), cert. denied, 120 S. Ct. 2657 (2000). Accordingly, we review the district court's interpretation of § 103 de novo, Houston v. Norton, 215 F.3d 1172, 1174 (10th Cir. 2000), and "construe the allegations in the complaint, and any reasonable inferences to be drawn from them, in favor of Plaintiff[s]." Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996); see also Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) (applying same standard of review to sua sponte dismissal for lack of jurisdiction).

The district court described Plaintiffs' arguments in the following terms: "CRG and CRLC contended at the hearing that, although they were not a political committee and they did not engage in independent expenditures as defined by the statute, the provision[s] of the statute, when read together, made them 'political committees' and brought them within the purview of the statute." 2 J.A. 289 (Order, June 18, 1997). Our review of the record indicates that this characterization of Plaintiffs' arguments was inaccurate. At the hearing referenced by the district court, Plaintiffs' counsel cogently stated that "both plaintiffs [CRG and CRLC] do have expenditures which unambiguously

refer to candidates for state political office. Therefore, they are deemed to have under the statute made an independent expenditure and therefore are deemed to be a political committee." 13 J.A. 2819 (Tr. of H'rg on Mot. for Prelim. Inj., March 14, 1997). These claims were consistent with the allegations in the complaint. CRLC et al. Compl. at ¶¶ 9-10 (Dec. 10, 1996), attached to CRLC et al. Br. at A166-67 (Dec. 16, 1999). Thus, we do not agree that Plaintiffs conceded that the § 103 definitions were inapplicable to their organizations. Indeed, taking all factual allegations in the complaint as true, and construing all reasonable inferences therefrom in favor of Plaintiffs, we find that the plain language of § 103(7), (10)(a), and (11) is clearly applicable to CRG and CRLC and that the organizations face a credible threat of prosecution under the FCPA. Accordingly, we hold that the district court erred in denying CRG and CRLC standing to challenge the definitions.

> a.  **Are Subsections 103(7), (10)(a), and (11) Applicable to CRG and CRLC and Their Activities?**

The district court deferred to Colorado's narrow construction of the statute, which the court deemed "reasonable in light of both [the statute's] purpose and its plain language." 2 J.A. 289 (Order, June 18, 1997). Colorado's construction focuses on the emphasized portions of the following four clauses in § 103: (1) the definition of "political message" as "a message . . . which advocates the election or defeat of any candidate _or which unambiguously refers to such candidate_," see Colo. Answer Br. at 19 (Jan. 14, 2000); (2) the provision that "'[i]ndependent expenditure' _includes_ expenditures for

- 23 -

political messages which unambiguously refer to any specific public office or candidate for such office," see id. at 15-18; (3) the definition of "political committee," in part, as "two or more persons who . . . have associated themselves . . . for the purpose of making independent expenditures," see id. at 14-15; and (4) the exception in the definition of "independent expenditure" for "expenditures made by persons, other than political parties and political committees, in the regular course and scope of their business and political messages sent solely to their members." See id. at 17.

### i. § 103(7) and (11): Do CRG and CRLC Make "Independent Expenditures" for "Political Messages"?

Because the definition of "independent expenditure" incorporates the definition of "political message," we begin our analysis with the definition of political message. Under § 103(11), a "political message" is a "message delivered by telephone, any print or electronic media, or other written material which advocates the election or defeat of any candidate or which unambiguously refers to such candidate." Colorado urges us to adopt its reading of § 103(11). Under the state's construction, the disjunctive phrase "advocates the election or defeat of . . . or . . . unambiguously refers to . . ." is read as if it were written in the conjunctive, thereby rendering the statute inapplicable to organizations -- like CRLC and CRG -- who do unambiguously refer to candidates, but do not expressly advocate their election or defeat. See Colo. Answer Br. at 16, 19 (Jan. 14, 2000). In other words, Colorado asks as to construe the fourth "or" in the definition as signifying

- 24 -

"and." We are unable to do so.

We interpret state laws according to state rules of statutory construction. Phelps v. Hamilton, 59 F.3d 1058, 1071 n.23 (10th Cir. 1995). The goal of Colorado courts in "interpreting the meaning or scope of any statutory term . . . is to effectuate the intent of the legislature." People v. McCullough, 6 P.3d 774, 778 (Colo. 2000) (en banc) (citations omitted). "[W]e look first to the language of the statute itself to determine the legislative intent." Id. at 778. "Where the statutory language is clear and unambiguous on its face, there is no need to apply rules of statutory construction because it may be presumed that the legislature meant what it clearly said." In re Title, Ballot Title & Submission Clause & Summary for 1999-2000 No. 219, 999 P.2d 819, 820 (Colo. 2000) (en banc). Although § 103 was originally proposed via ballot initiative, Colorado courts employ "the general rules of statutory construction when interpreting citizen-initiated measures." Bickel v. City of Boulder, 885 P.2d 215, 228 n.10 (Colo. 1994) (en banc).

The definition of "political message" in § 103(11) is "clear and unambiguous." In re 1999-2000 No. 219, 999 P.2d at 820. We may therefore "presume[] that the legislature meant what it clearly said," i.e., that all four uses of the word "or" in § 103(11) were intended to signify "or" -- not sometimes "or" and sometimes "and." Id.; cf. Foutz v. United States, 72 F.3d 802, 805 (10th Cir. 1995) ("The word "or" . . . is not a fertile word which is subject to varied constructions."). We need not look to the State's construction for assistance with this interpretation; our inquiry ends with the plain language of the

- 25 -

statute. We hold that the use of the disjunctive term "or" in § 103(11) renders the definition of "political message" applicable to messages which "unambiguously refer to a candidate," even if such messages do not also "advocate the election or defeat" of that candidate. In sum, to qualify as a political message under § 103(11), a message need only: (1) be delivered by telephone, any print or electronic media, or other written material, and (2) either (a) advocate the election or defeat of any candidate or (b) unambiguously refer to such candidate.

Colorado's next argument focuses on the definition of "independent expenditure" in § 103(7). The first sentence of the definition provides that a payment is an independent expenditure when it is (1) made "for the purpose of advocating the election or defeat of a candidate," and (2) "not controlled by, or coordinated with, any candidate or any agent of such candidate." The second sentence provides that "'[i]ndependent expenditure' includes expenditures for political messages which unambiguously refer to any specific public office or candidate for such office." Colorado argues that the second sentence does not expand upon the first, but merely clarifies its meaning. Colo. Answer Br. at 16 (Jan. 14, 2000). Again, we disagree.

Colorado is among "the overwhelming majority of jurisdictions" that read the word "includes" as "a term of extension or enlargement when used in a statutory definition." Colo. Common Cause v. Meyer, 758 P.2d 153, 163-64 (Colo. 1988) (en banc). Therefore, "[t]he use of 'includes' in the statutory definition . . . connotes that

something else is encompassed by the definition <u>beyond</u> what was previously covered by the immediately preceding language." <u>Id.</u> at 164 (citation omitted, emphasis added). In this case, that "something else" is "expenditures for political messages which unambiguously refer to any specific public office or candidate for such office."

As noted above, our standard of review requires us to accept as true the factual allegations underlying Plaintiffs' challenges. <u>See</u> <u>Seamons</u>, 84 F.3d at 1231-32; <u>Apple</u>, 183 F.3d at 479. In their complaint, CRLC and CRG each allege that

> [the organization's] purposes are to educate the public on issues relating to abortion, to restore protection of the life for [sic] unborn children, and to promote the sanctity of all innocent life. Its major purpose is not to nominate, elect, or defeat candidates, or to pass or defeat ballot measures, and it does not engage in express advocacy. As part of its issue advocacy, CRLC distributes voter guides prior to state elections which educate the voting public on the positions of candidates on issues of public concern. <u>CRLC's voter guides unambiguously refer to specific candidates</u> but do not expressly advocate the election or defeat of any candidate.

CRLC et al. Compl. at ¶ 9 (Dec. 10, 1996), <u>attached to</u> CRLC et al. Br. at A166 (Dec. 16, 1999); <u>see also</u> <u>id.</u> at ¶ 10 (same allegations with respect to CRG). Accepting these allegations as true, as we must, we hold that the voter guides distributed by CRLC and CRG clearly constitute "political messages," as defined in § 103(11). CRLC and CRG also allege that they are "not associated with any political candidate, political party, or campaign committee." <u>Id.</u> at ¶¶ 9-10. In light of our obligation to accord CRLC and CRG the benefit of all reasonable inferences, we infer from this allegation of independence that the distribution of voter guides "is not controlled by, or coordinated

with, any candidate or any agent of such candidate." Colo. Rev. Stat. § 1-45-103(7). We therefore conclude that the funds expended by CRLC and CRG to produce and disseminate voter guides are subject to regulation as "independent expenditures," as the term is defined in § 103(7).

### ii. § 103(10)(a): Were CRLC and CRG Formed "For the Purpose of" Making "Independent Expenditures"?

Colorado's next argument relates to the definition of "political committee" in § 103(10)(a), and relies heavily on Common Sense Alliance v. Davidson, 995 P.2d 748 (Colo. 2000). In that case, the Colorado Supreme Court interpreted an analogous FCPA provision, § 103(8), which defines "issue committee," in part, as "[t]wo or more persons who are elected, appointed, or chosen, or have associated themselves, for the purpose of accepting contributions and making expenditures to support or oppose any ballot issue or ballot question . . . ." Colo. Rev. Stat. § 1-45-103(8)(I) (2000) (emphasis added). In response to the certified question of "whether an organization formed for other purposes may later become an issue committee as defined by the FCPA," Common Sense Alliance, 995 P.2d at 749, the court held that the phrase "for the purpose of" must be read to include "only those issue committees that were formed for the purpose of supporting or opposing a ballot initiative. Organizations that form for another purpose and later commit to ballot issue activity are not within the clear ambit of the statute." Id. at 758 (emphasis added).

- 28 -

This court is bound by the Colorado Supreme Court's interpretation of § 103(8). Johnson v. Fankell, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."); Am. Constitutional Law Found., Inc. v. Meyer, 120 F.3d 1092, 1106 (10th Cir. 1997), aff'd, 525 U.S. 182 (1999). Although Common Sense Alliance construed "for the purpose of" in § 103(8) rather than § 103(10)(a), it is a well-settled rule that identical words or phrases in the same statute have the same meaning. Colo. Common Cause, 758 P.2d at 161 ("[W]hen . . . the legislature employs the same words or phrases in different parts of a statute, then, in the absence of any manifest indication to the contrary, the meaning attributed to the words or phrases in one part of the statute should be ascribed to the same words or phrases found elsewhere in the statute."). Thus, we hold that a "political committee" is formed when two or more persons associate themselves with the <u>original</u> purpose of making independent expenditures.

CRLC, CRG, and Citizens for Responsible Government State Political Action Committee ("CRGS-PAC") filed their initial complaint on December 10, 1996. See 1 J.A. 3 (Docket for No. 96-S-2844). The district court dismissed their § 103 claims on June 18, 1997. 2 J.A. 288-90. Common Sense Alliance was decided almost three years later, on March 13, 2000. It is therefore not surprising that Plaintiffs' complaint only sets forth the organizations' present purposes, without specifically alleging the purposes for

which they were originally formed. Giving Plaintiffs the benefit of all reasonable inferences, we surmise that the organizations' current purposes are consistent with their original purposes, and that they would be permitted to amend their complaint accordingly. Thus, CRLC and CRG are "political committees," as the term is defined in § 103(10)(a), and the district court's ruling to the contrary was erroneous.[7] Accordingly, § 103(7)'s exception for "expenditures made by persons, other than political parties and political committees, in the regular course and scope of their business" does not apply to CRG or CRLC.

**b.      Do CRLC and CRG Face a Credible Threat of Prosecution Under the FCPA?**

A plaintiff need not "await and undergo a criminal prosecution" in order to challenge a statute on constitutional grounds. Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (quoting Doe v. Bolton, 410 U.S. 179, 188 (1973)). Article III standing exists "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder . . . ." Id. The plaintiff "need not demonstrate to a certainty that it will be prosecuted," Vt. Right to Life,

---

[7] At oral argument, Colorado cited Common Sense Alliance -- which was decided after briefing was complete -- for the general proposition that the FCPA must be interpreted narrowly. The case does not go that far. While the court does characterize its construction of § 103(8) as a narrow one relative to the construction urged by the plaintiffs, it also notes that "we are bound by the Act's plain language." Id. at 755; see also id. (noting the court's obligation to "resist the temptation to change the statutory language, and . . . leave any repair to the General Assembly or the electorate.").

221 F.3d at 382, only that it has "an actual and well-founded fear that the law will be enforced against [it]." Id. (quoting Am. Booksellers', 484 U.S. at 393).

Throughout this litigation, Colorado has insisted that under the State's construction of § 103(7), (10)(a), and (11), organizations like CRLC and CRG will not be prosecuted under the FCPA. E.g., Colo. Answer Br. at 13-21 (Jan. 14, 2000). Such representations, however, are insufficient to overcome the chilling effect of the statute's plain language. In this sense, this case presents an even more compelling threat of prosecution than the plaintiff faced in Vermont Right to Life Committee, Inc. v. Sorrell, 221 F.3d 376 (2d Cir. 2000). The statute challenged in Vermont Right to Life established content requirements for political advertisements -- including advertisements that only "implicitly advocate[d] the success or defeat of a candidate." Id. at 380 (quoting Vt. Stat. Ann. tit. 17, § 2881). The statute required all such advertisements to "clearly designate the name of the candidate, party or political committee by or on whose behalf the same is published or broadcast." Id. (quoting Vt. Stat. Ann. tit. 17, § 2882) (emphasis added). The State read "on whose behalf" to mean only "as the agent or representative of"; the plaintiff read the phrase to include any advertisement "supporting a viewpoint with which a candidate is associated or with which his or her opponent takes issue . . . ." Id. at 383. While suggesting that the State's construction was "perhaps even better," the Second Circuit deemed the plaintiff's construction "reasonable enough" to support a legitimate fear of prosecution. Id. In this case, we need not defer to either side's construction. As

discussed above, CRG and CRLC are clearly covered by the plain language of the statute.

This case is also distinguishable from Wisconsin Right to Life, Inc. v. Paradise, 138 F.3d 1183 (7th Cir. 1998), in which the court denied the plaintiff standing to challenge an ambiguously worded statute because the interpretive mandate sought in the lawsuit was already codified in an advisory opinion by the Wisconsin Attorney General and in regulations promulgated by the Wisconsin Election Board. Id. at 1185. The court therefore held that the plaintiff's fear of prosecution was not well-founded, id. at 1186, characterizing the lawsuit as an attempt "to resolve a controversy that has not yet arisen and may never arise." Id. at 1187-88. In the present case, we are aware of no such administrative regulations, and the Secretary's representations in this litigation are not binding on this or future administrations. See Am. Booksellers', 484 U.S. at 395 ("[A]s the [State] Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative."); accord Vt. Right to Life, 221 F.3d at 383-84 (citations omitted). We therefore hold that the fear of prosecution alleged by CRLC and CRG is sufficiently well-founded to support Article III standing.

## 2. Are § 103(7), (10)(a), and (11) Constitutional?

Having determined that CRLC and CRG have standing to challenge § 103(7), (10)(a), and (11) on constitutional grounds, we now consider the merits of those claims. We review questions of constitutional law de novo. United States v. Wynne, 993 F.2d

760, 764 (10th Cir. 1993). Although Plaintiffs characterize their argument as an "overbreadth" challenge, CRLC et al. Br. at 22-25 (Dec. 16, 1999), we must consider the Supreme Court's admonition that overbreadth analysis is "strong medicine," to be applied "sparingly and only as a last resort." Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973). The Court has recently affirmed that "the overbreadth doctrine enables litigants 'to challenge a statute, not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" Hill v. Colorado, 120 S. Ct. 2480, 2497-98 (2000) (quoting Broadrick, 413 U.S. at 612) (emphasis added). In this case, it is unnecessary to employ the overbreadth doctrine because the challenged definitions are unconstitutional as applied to Plaintiffs CRLC and CRG. See Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 501 (1985) (noting that one of "the cardinal rules governing the federal courts" is "never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied") (quotations and citation omitted). The phrases "which unambiguously refer to any specific public office or candidate for such office" in § 103(7), and "or unambiguously refers to such candidate" in § 103(11), each extend the reach of the FCPA's substantive provisions "to advocacy with respect to public issues, which is a violation of the rule enunciated in Buckley and its progeny." Vt. Right to Life Comm., 221 F.3d at 387.

We must next inquire whether the definitions, though unconstitutional as written, can be saved. See NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 30 (1937) ("The cardinal principle of statutory construction is to save and not to destroy."). Courts employ two mechanisms to preserve unconstitutional statutes from wholesale invalidation. See New York v. Ferber, 458 U.S. 747, 769 n.24 (1982); Am. Civil Liberties Union v. Reno, 217 F.3d 162, 177 (3d Cir. 2000). First, if a statute is readily susceptible to a narrowing construction that will remedy the constitutional infirmity, the statute will be upheld. Am. Booksellers', 484 U.S. at 397. If the language is not readily susceptible to a narrowing construction, but the unconstitutional language is severable from the remainder of the statute, "that which is constitutional may stand while that which is unconstitutional will be rejected." Brockett, 472 U.S. at 502 (quotations omitted).

### a. Can the Definitions be Saved by a Narrowing Construction?

In order to save the definitions, they must be construed to apply only to expenditures for communications that contain explicit words advocating the election or defeat of a clearly identified candidate. See Buckley, 424 U.S. at 44. It is well-settled that a federal court must uphold a statute if it is "'readily susceptible' to a narrowing construction that would make it constitutional . . . . The key to application of this principle is that the statute must be 'readily susceptible' to the limitation; we will not rewrite a state law to conform it to constitutional requirements." Am. Booksellers', 484 U.S. at 397 (citations omitted, emphasis added). Even the Supreme Court is "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." Stenberg v. Carhart, 120 S. Ct. 2597, 2616 (2000) (quotations and citations omitted); see also Almendarez-Torres v. United States, 523 U.S. 224, 238 (1998) (statute must be "genuinely susceptible" to narrowing construction); City of Houston v. Hill, 482 U.S. 451, 468 (1987) ("fairly" or "obviously susceptible"); Erznoznik v. City of Jacksonville, 422 U.S. 205, 216 (1975) ("easily susceptible").

In order to narrow § 103(7) and (11) so that they are consistent with Buckley, we would not only have to add qualifying language (indicated with an underline), but would also have to disregard entire phrases (indicated by ~~strikeouts~~):

§ 103(7) "Independent expenditure" means payment of money by any person for the purpose of expressly advocating the election or defeat of a candidate, which expenditure is not controlled by, or coordinated with, any

- 35 -

candidate or any agent of such candidate. 'Independent expenditure' includes expenditures for political messages ~~which unambiguously refer to any specific public office or candidate for such office~~ . . . .

§ 103(11) "Political message" means a message delivered by telephone, any print or electronic media, or other written material which <u>expressly</u> advocates the election or defeat of any candidate ~~or which unambiguously refers to such candidate~~.[8]

To rewrite the statutes in this manner would exceed the power and function of the court, and would fail to bind state prosecutors, leaving the citizens of Colorado vulnerable to prosecutions under the actual language of the statute. See <u>Stenberg</u>, 120 S. Ct. at 2616; <u>Am. Booksellers'</u>, 484 U.S. at 397. "Accordingly, we decline [Colorado's] invitation to give the statute[s] a construction more restrictive than that provided by [their] plain language." <u>Wilson v. Stocker</u>, 819 F.2d 943, 948 (10th Cir. 1987). As written, § 103(7), (10), and (11) are not susceptible of a narrowing construction. As explained below, however, we can sever the problematic language from the definitions and then narrowly construe the remaining text.

### b.      Severability/Partial Invalidation

Although we cannot save the definitions with a narrowing construction, we need not invalidate the entire statutory scheme. In <u>Brockett v. Spokane Arcades, Inc.</u>, 472 U.S. 491 (1985), the Court reversed the Ninth Circuit's facial invalidation of a state obscenity statute according to the "normal rule that partial, rather than facial, invalidation is the

---

[8] The definition of "political committee" in § 103(10)(a) incorporates both of the definitions above, but would require no additional alternation.

required course." Id. at 504. The statute at issue codified the Supreme Court's definition of obscenity, see Miller v. California, 413 U.S. 15, 24 (1973), including the requirement that "the average person, applying contemporary community standards, would find [that the material], when considered as a whole, appeals to the prurient interest . . . ." Brockett, 472 U.S. at 493 (quoting Wash. Rev. Code § 7.48A.010(2)(a) (1983)). Unlike Miller, which left the word undefined, the Washington statute defined "prurient" as "that which incites lasciviousness or lust." Id. (quoting Wash. Rev. Code § 7.48A.010(8)). The Court assumed without deciding that the Ninth Circuit was correct in holding that the inclusion of "lust" rendered the definition "overbroad," see id. at 500-01 & n.10, but held that "[f]acial invalidation of the statute was nevertheless improvident." Id. at 501.

Noting that "the same statute may be in part constitutional and in part unconstitutional," the Brockett Court held that "if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected." Id. at 502 (quotations and citations omitted); accord Denver Area Educ. Telecomm. Consortium, Inc. v. FCC, 518 U.S. 727, 767 (1996) (Breyer, J., concurring). "[T]he rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it" applies with equal force in the First Amendment context. Brockett, 472 U.S. at 502. In order to determine whether partial invalidation of a state statute is appropriate, federal courts look to state law. Id. at 506-07.

The FCPA contains the following severability clause:

If any provision of this article or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the article which can be given effect without the invalid provision or application, and to this end the provisions of this article are declared to be severable.

Colo. Rev. Stat. § 1-45-118 (2000). Under Colorado law, a severability clause "creates a presumption that the legislature would have been satisfied with the portions of the statute that remain after the offending provisions are stricken as being unconstitutional." People v. Seven Thirty-Five East Colfax, Inc., 697 P.2d 348, 371 (Colo. 1985) (en banc) (citation omitted), cited with approval in People v. District Court, 834 P.2d 181, 190 (Colo. 1992) (en banc). The presumption of severability raised by the clause is dispelled only "if what remains is so incomplete or riddled with omissions that it cannot be salvaged as a meaningful legislative enactment." City of Lakewood v. Colfax Unlimited Ass'n, 634 P.2d 52, 70 (Colo. 1981) (en banc) (quotations, alterations, and citation omitted), cited with approval in People v. District Court, 834 P.2d at 190; accord Montezuma Well Serv., Inc. v. Indus. Claim Appeals Off., 928 P.2d 796, 798 (Colo. Ct. App. 1996).

In this case, the constitutionally problematic portions are discrete and their removal would not compromise the integrity or coherence of the statute in any way. The presumption of severability raised by § 118 is therefore controlling. We conclude that the unconstitutional phrases are severable, and we hereby declare subsections (7), (10)(a), and (11) of § 103 invalid only insofar as they reach beyond that which may

constitutionally be regulated. <u>Brockett</u>, 472 U.S. at 504. Specifically, we strike only the

language indicated below:

> § 103(7) "Independent expenditure" means payment of money by any person for the purpose of advocating the election or defeat of a candidate, which expenditure is not controlled by, or coordinated with, any candidate or any agent of such candidate. "Independent expenditure" includes expenditures for political messages ~~which unambiguously refer to any specific public office or candidate for such office~~ . . . .

> § 103(11) "Political message" means a message delivered by telephone, any print or electronic media, or other written material which advocates the election or defeat of any candidate ~~or which unambiguously refers to such candidate~~.

Without the stricken phrases, the remainder of the definitions are "readily susceptible" to

an interpretation that is consistent with <u>Buckley</u> and <u>MCFL</u> – <u>i.e.</u>, that a "political

message" is "a message delivered by telephone, any print or electronic media, or other

written material which [expressly] advocates the election or defeat of any candidate," and

that an "independent expenditure" is "payment of money . . . for the purpose of

[expressly] advocating the election or defeat of any candidate . . . ." <u>E.g.</u>, <u>Buckley</u>, 424

U.S. at 44 n.52.

**B.    § 107(1)**

§ 107(1) imposes disclosure requirements on independent expenditures exceeding

$1,000.[9] Under § 107(1), the donor must provide written notice of each such expenditure

---

[9] The text of § 107(1) is as follows:

> Any person making an independent expenditure in excess of one thousand dollars shall deliver notice in writing of such

to the Secretary of State, as well as to each candidate in the race (the "candidate-notice provision"). The notice must be in writing and must include: (1) the amount of the expenditure, (2) a "detailed description" of the use of the expenditure, and (3) the name of the candidate whom the expenditure is intended to support or oppose. The notice must be delivered to all candidates and to the Secretary of State within twenty-four hours after "obligating funds" for the expenditure. Violations of § 107(1) are punishable by a "penalty of ten dollars per day for each day that a statement or other information required to be filed . . . is not filed by the close of business on the day due." Colo. Rev. Stat. § 1-45-113(4) (2000).

Plaintiffs challenge § 107(1) on two grounds. First, they contend that the phrase "obligating funds" is impermissibly vague. Second, they assert that the disclosure requirements, particularly the candidate-notice requirement, unconstitutionally burden their First Amendment rights because the requirements are not narrowly tailored to a compelling governmental interest. Because we hold that § 107(1) is not narrowly tailored, we need not reach Plaintiffs' vagueness argument.

_____

> independent expenditure, as well as the amount of such expenditure, and a detailed description of the use of such independent expenditure, within twenty-four hours after obligating funds for such expenditure. Such notice shall be delivered to all candidates in the affected race and to the secretary of state. The notice shall specifically state the name of the candidate whom the independent expenditure is intended to support or oppose. Each independent expenditure shall require the delivery of a new notice.

- 40 -

As this court has recently noted, our analysis of any election-related statute "turn[s] in large measure on whether the regulation at issue is subject to a balancing test or strict scrutiny." Campbell v. Buckley, 203 F.3d 738, 742 (10th Cir. 2000). The Supreme Court has recently affirmed that "'exacting scrutiny' is necessary when compelled disclosure of campaign-related payments is at issue." Buckley v. Am. Constitutional Law Found., 525 U.S. 182, 202 (1999) (citation omitted) [hereinafter "ACLF"]; see also Timmons v. Twin Cities Area New Party, 520 U.S. 351, 358 (1997) ("Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest."); Campbell, 203 F.3d at 745 ("[S]trict scrutiny is employed where the quantum of speech is limited due to restrictions on campaign expenditures . . . or the anonymity of [] supporters [of a candidate or initiative].") (citations omitted).

A state may constitutionally require that independent expenditures be reported to some governmental entity and made available to the public. E.g., Buckley, 424 U.S. at 80-81. Such requirements are supported by three compelling governmental interests. "First, disclosure provides the electorate with information as to where political campaign money comes from and how it is spent by the candidate in order to aid the voters in evaluating those who seek federal office." Buckley, 424 U.S. at 66 (quotations and footnote omitted); see also ACLF, 525 U.S. at 202. Second, disclosure requirements "deter actual corruption and avoid the appearance of corruption by exposing large

contributions and expenditures to the light of publicity." ACLF, 525 U.S. at 202 (quoting Buckley, 424 U.S. at 67). "Third, . . . recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations . . . ." Buckley, 424 U.S. at 67-68. Public reporting schemes have been upheld as narrowly tailored to further these interests.

We see no constitutional problems with the content requirements of Colorado's public reporting scheme. Under § 107(1), notices of independent expenditures over $1,000 must include: (1) the amount of the expenditure, (2) a "detailed description" of the use of the expenditure, and (3) the name of the candidate whom the expenditure is intended to support or oppose. Colo. Rev. Stat. § 1-45-107(1). In Buckley, the Court upheld a reporting provision applicable to any person making an independent expenditure in excess of $100, provided that the statute was narrowly construed to apply only to "express advocacy." Id. at 80-82 (upholding 2 U.S.C. § 434(e)); see also id. at 155-60 (quoting § 434 in full). Specifically, the statute required any person making an independent expenditure in excess of $100 to file a statement with the FEC that contained, inter alia, the following information: "the amount, date, and purpose of each such expenditure and the name and address of, and office sought by, each candidate on whose behalf such expenditure was made." Id. at 158. The content requirements approved in Buckley v. Valeo are nearly identical to those set forth in § 107(1).

We cannot, however, uphold the patently unreasonable twenty-four hour notice requirement. To require such immediate notice severely burdens First Amendment rights, and the provision is a far cry from being narrowly tailored. None of the State's compelling interests in informing the electorate, preventing corruption and the appearance of corruption, or gathering data would be at all compromised by a more workable deadline. We cannot substitute our own judgment for that of the legislature as to a more appropriate and reasonable time frame, cf. Ho v. Greene, 204 F.3d 1045, 1057 (10th Cir. 2000), nor can we uphold the provision as written. Further, because the twenty-four hour requirement is integral to the statutory scheme, it is not severable. Although the FCPA's severability clause creates a presumption that its provisions are severable, see People v. District Court, 834 P.2d at 190, that presumption is overcome with respect to § 107(1) because the notice requirements would be meaningless without a time frame. City of Lakewood, 634 P.2d at 70. Therefore, we must invalidate § 107(1) in its entirety. See Brockett, 472 U.S. at 501-02.

The twenty-four hour requirement is not the provision's only constitutional defect. Section 107(1) does not only require that independent expenditures be reported to the Secretary and made available to the public -- it also requires immediate written notice to each candidate in the race. We apply strict scrutiny where, as in this case, the "deterrent effect on the exercise of First Amendment rights arises, not through direct government action, but indirectly as an unintended but inevitable result of the government's conduct

- 43 -

in requiring disclosure." Buckley, 424 U.S. at 65; see also Timmons, 520 U.S. at 358 (holding that severe burdens on First Amendment freedoms are subject to "the most exacting scrutiny"). The chilling effect of requiring immediate written notice of each significant expenditure to every candidate in a race is self-evident. The candidate-notice provision must therefore be justified by a compelling government interest and must be narrowly tailored to further that interest.

The Secretary of State has made absolutely no attempt to justify the candidate-notice requirement. Colo. Answer Br. at 33-42 (Jan. 14, 2000) (discussing disclosure provisions without any specific reference to the candidate-notice requirement). The only argument even approaching a justification is Colorado's general assertion of the danger that "the independent expenditure of money may become a conduit to avoid the contribution limits and disclosure requirements . . . ." Id. at 35. "When the Government defends a regulation on speech as a means to . . . prevent anticipated harms, it must do more than simply posit the existence of the disease sought to be cured." Turner Broad. Sys. v. FCC, 512 U.S. 622, 664 (1994) (quotations and citation omitted). As explained, the Supreme Court has recognized three compelling interests in support of public reporting provisions: (1) providing "the electorate with information 'as to where political campaign money comes from . . .' in order to aid the voters in evaluating those who seek federal office." Buckley, 424 U.S. at 66 (footnote omitted, emphasis added); (2) preventing corruption and the "appearance of corruption by exposing large . . .

- 44 -

expenditures to the light of publicity," ACLF, 525 U.S. at 202 (quotations and citation omitted, emphasis added); and (3) "gathering the data necessary to detect violations," Buckley, 424 U.S. at 67-68 (emphasis added). All three interests would be adequately served by a public disclosure requirement. Cf. Iowa Right to Life Comm., 187 F.3d at 968. The candidate-notice provision is not simply overkill, but is in fact completely unrelated to the interests set forth above.

In sum, we hold that neither the twenty-four hour requirement nor the candidate-notice provision can survive strict scrutiny. Although the candidate-notice provision might be severable from the rest of § 107(1), see People v. District Court, 834 P.2d at 190, we need not reach this issue because it is clear that we cannot strike the twenty-four hour requirement without undermining the entire public reporting scheme. Accordingly, § 107(1) must fail in its entirety.

## C. § 107(2)

§ 107(2) requires donors who make independent expenditures in excess of $1,000 to include identifying information in any political message produced by the expenditure.[10]

---

[10] Section 107(2) provides:

> Any person making an independent expenditure in excess of one thousand dollars shall disclose in the political message produced by the expenditure, the full name of the person, the name of the registered agent, the amount of the expenditure, and the specific statement that the advertisement or material is not authorized by any candidate. Such disclosure shall be prominently featured in the political message.

- 45 -

The political message must also include the amount of the expenditure and a disclaimer that "the advertisement or material is not authorized by any candidate." The disclaimer must be "prominently featured." Plaintiffs challenge § 107(2) as a direct violation of the right to engage in anonymous political speech. CRLC et al. Br. at 50-62 (Dec. 16, 1999); Durham/CRC et al. Br. at 72-76 (Dec. 15, 1999). As explained, our review of constitutional questions is de novo. See Wynne, 993 F.2d at 764.

The Supreme Court has recognized that disclaimer statutes, which require that a speaker include specified language or information in her speech, impose more substantial burdens on First Amendment rights than disclosure or reporting provisions like the scheme set forth in § 107(1). See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 355 (1995) ("[Although] mandatory reporting undeniably impedes protected First Amendment activity, the intrusion is a far cry from compelled self-identification on all election-related writings." ). Like disclosure provisions, disclaimer requirements are subject to strict scrutiny. Id. at 345-46 (characterizing disclaimer requirement as "a limitation on political expression subject to exacting scrutiny") (quotations and citation omitted); Campbell, 203 F.3d at 745 ("[S]trict scrutiny is employed where the quantum of speech is limited due to restrictions on . . . the available pool of . . . supporters of a candidate . . . or the anonymity of such supporters . . . .") (citations omitted).

We agree with Plaintiffs that the district court failed to distinguish between disclosure and disclaimer requirements -- a constitutionally significant difference. See

McIntyre, 514 U.S. at 355.  Section 107(2) is clearly a disclaimer statute.  The Supreme Court confirmed its distaste for such statutes last year in ACLF, when it affirmed this court's invalidation of a Colorado law requiring petition circulators to wear identification badges that included the circulator's full name.  See ACLF, 525 U.S. at 199 ("The injury to speech is heightened for the petition circulator because the badge requirement compels personal name identification at the precise moment when the circulator's interest in anonymity is greatest."), aff'g 120 F.3d 1092 (10th Cir. 1997).  Section 107(2)'s sweeping requirement that the donor be identified in all political messages produced by independent expenditures over $1,000 is clearly inconsistent with McIntyre and ACLF.

In its only effort to justify § 107(2), the State essentially concedes that the statute cannot withstand strict scrutiny.  Colorado offers no compelling reason for the disclaimer requirement, stating only that "it is hardly unreasonable for a disclosure to be included in a message rather than requiring citizens to write or travel to the state capital to obtain the same information."  Colo. Answer Br. at 34 (Jan. 14, 2000) (emphasis added).  This argument is both factually disingenuous and legally insufficient.  Even assuming that the convenience of citizens qualified as a compelling state interest, which it does not, § 107(2) could hardly be described as narrowly tailored.  Many less restrictive means of facilitating access to campaign finance information exist.

§ 107(2) also requires that political messages produced by independent expenditures over $1,000 include the amount of the expenditure and a statement that the

message was not authorized by the candidate. Colorado has offered no justification for these requirements. "Especially where . . . a prohibition is directed at speech itself, and the speech is intimately related to the process of governing, the State may prevail only upon showing a subordinating interest which is compelling, and the burden is on the Government to show the existence of such an interest." First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 786 (1978) (quotations, citations, and footnote omitted). In the absence of any proffered justification, Colorado simply cannot meet this burden. Accordingly, § 107(2) also fails to pass constitutional muster.

**D.    The Equal Protection Clause**

Plaintiffs also challenge § 107 as "unconstitutionally singl[ing] out one type of speech – independent expenditures – for different and severe, content and reporting requirements" in violation of the First Amendment and the Equal Protection Clause. Durham/CRC et al. Br. at 75-76 (Dec. 15, 1999). In light of our disposition of Plaintiffs' other arguments, we need not consider the Equal Protection claims.

**Conclusion**

We hold that the challenges to §§ 103(12), 104, 105, and 106(2) have been mooted by the passage of H.B. 00-1194. We therefore VACATE the portions of the district court's orders that deal with those provisions, including the portions that address the parties' standing to challenge them, and REMAND the mooted claims for dismissal without prejudice. The appeal regarding § 106(1) is DISMISSED. We further hold that § 103(7), (10)(a), and (11) are unconstitutional as written but that the unconstitutional portions are severable from the definitions. The definitions are therefore declared partially invalid, as indicated in this opinion, and all portions of the district court's orders that relate to the definitions and the parties' standing to challenge them are REVERSED. Finally, we hold that § 107(1) and (2) are unconstitutional and we REVERSE the district court's judgment upholding those provisions. All motions currently pending before this court are DENIED.